Argued January 17, affirmed February 10, petition for rehearing
denied March 7, petition for review
denied May 16, 1972

JOHN WILLIAM RAISLEY, *Appellant, v.*
SULLIVAN (No. 72124), *Respondent.*

RUSSELL EARL SHOUSE, *Appellant, v.*
CUPP (No. 72191), *Respondent.*

493 P2d 745

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for appellants. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Jim G. Russell,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

These cases were consolidated for the purpose of appealing from orders of the circuit court which denied petitions for post-conviction relief.

The petitioners each pled guilty to indictments charging them with the two crimes of Burglary, ORS 164.230, and Burglary Not in a Dwelling, ORS 164.240.

Each amended petition for post-conviction relief alleges:

> "That petitioner's plea is void because he did not knowingly and understandingly waive his rights to compulsory process and confrontation and his right against self-incrimination."

■ At the outset we must determine what the record[1] has to show in order to sustain a conviction based on a guilty plea entered after June 2, 1969, when that conviction is challenged in a post-conviction proceeding. On that date *Boykin v. Alabama,* 395 US 238, 89 S Ct 1709, 23 L Ed 2d 274 (1969), was handed down. *Boykin* holds that there must be an affirmative showing that a guilty plea was intelligent and voluntary. The opinion discusses the constitutional rights which are involved when a plea of guilty is entered, i.e., the privilege against self-incrimination, right to jury trial and right to confront one's accusers.

State courts[2] have interpreted *Boykin* in two ways. Some courts have required the record to show that the defendant was advised of, understood and voluntarily waived his privilege against self-incrimination and his rights to trial by jury and confrontation. *In re Tahl,* 1 Cal 3d 122, 81 Cal Rptr 577, 460 P2d 449 (1969), *cert denied* 398 US 911, 90 S Ct 1708, 26 L Ed 2d 72 (1970) ; *Stocks v. Warden,* 86 Nev 758, 476 P2d 469 (1970) ; *State v. Guy,* 81 NM 641, 471 P2d 675 (1970) ; *Nachtigall v. Erickson,* 85 SD 122, 178 NW2d 198 (1970) ; *State v. Abodeely,* 179 NW2d 347 (Iowa 1970), *cert denied* 402 US 936, 29 L Ed 2d 104, 91 S Ct 1617 (1971) ; *State ex rel French v. Henderson,* 255 La 792, 232 So2d 517 (1970).

Other states have held that the issue to be determined in a post-conviction proceeding is whether

---

[1] The record can include transcripts of both the post-conviction proceeding and the original entry of plea proceedings. Ferren v. Cupp, 7 Or App 353, 490 P2d 208 (1971) Sup Ct *review denied* (1972). *But see,* Schram v. Cupp, 436 F2d 692 (9th Cir 1970).

[2] In Arbuckle v. Turner, 440 F2d 586 (10th Cir 1971), the Tenth Circuit refused to decide the effect of *Boykin* on the grounds that the case before it involved a pre-*Boykin* plea and *Boykin* was not retroactive.

the guilty plea was entered voluntarily and intelligently. *State v. Patterson,* 14 Ariz App 158, 481 P2d 528 (1971); *The People v. McCullough,* 45 Ill 2d 305, 259 NE2d 19 (1970); *Grass v. State,* 263 A2d 63 (Me 1970); *People v. Taylor,* 383 Mich 338, 175 NW2d 715 (1970); *State v. Wolfe,* 46 Wis2d 478, 175 NW2d 216 (1970).

In *North Carolina v. Alford,* 400 US 25, 91 S Ct 160, 27 L Ed 2d 162 (1970), the petitioner challenged a guilty plea entered in a state court prior to *Boykin.*[9] Here the court stated:

"* * * The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. See *Boykin v. Alabama,* 395 U.S. 238, 242 * * *." 400 US at 31.

"* * * The new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily. * * *" *Brady v. United States,* 397 US 742, 747-48 n 4, 90 S Ct 1463, 25 L Ed 2d 747 (1970).

■ We agreed with those state courts which have decided that the standard for determining the validity of a guilty plea is whether the plea was entered understandingly and voluntarily.

Another basis for our holding is the fact that *Boykin* was decided shortly after *McCarthy v. United*

---

[9] Endsley v. Cupp, 1 Or App 169, 174–76, 459 P2d 448 (1969), Sup Ct *review denied* (1970), held that *Boykin* will not be applied retroactively.

The United States Supreme Court has never passed on the retroactivity of *Boykin. But see,* Halliday v. United States, 394 US 831, 89 S Ct 1498, 23 L Ed 2d 16, *rehearing denied* 395 US 971, 89 S Ct 2106, 23 L Ed 2d 761 (1969); North Carolina v. Alford, supra, 400 US at 29 n 3.

*States,* 394 US 459, 89 S Ct 1166, 22 L Ed 2d 418 (1969). The *McCarthy* decision involved the application of Rule 11 of the Federal Rules of Criminal Procedure which requires a federal judge to personally address the defendant before accepting his guilty plea. In *McCarthy,* the Supreme Court refused to impose a specific procedure on the lower federal courts:

> "The nature of the inquiry required by Rule 11 must necessarily vary from case to case, and, therefore, we do not establish any general guidelines other than those expressed in the Rule itself. \* \* \*" 394 US at 467 n 20.

■ For similar reasons, we decline to impose a rigid formula on our own courts. The judge who accepts a guilty plea must have sufficient latitude to tailor his questions to the needs of the defendant before him.

Of course the requirement that a guilty plea must be voluntary and intelligent in order to be valid is not a new one. The element added by *Boykin* is that the record must contain an *affirmative showing of the voluntariness of the plea.*

We turn now to an examination of the record before us.

Both petitioners were advised by the court of their right to court-appointed counsel at public expense and at their request the court appointed counsel for them. Petitioner Shouse wanted it understood that he would not have to keep the attorney appointed.[⊕] The court appointed a La Grande attorney for petitioners, who were in jail in Enterprise. At the post-conviction hearing petitioner Shouse testified that he telephoned the La Grande attorney and fired him

---

[⊕] The court assured Shouse he could always dismiss the court-appointed attorney and told him that conflicts sometimes required another appointment.

because it had been about two weeks and the attorney had not come to see him.

"\* \* \* [A]nd I told him I did not wish to have a lawyer—that I felt I wanted one at least that was trying to help me and he didn't actually say too much, so I told him I didn't wish to have a lawyer \* \* \*."

Petitioner then asked the lawyer to notify the judge that he did not want a lawyer.

At the post-conviction hearing petitioner Raisley also testified about the court-appointed La Grande attorney:

"Q  Did you have an attorney represent you at that time?

"A  To start off an attorney was appointed for us by the Court.

"Q  What was his name?

"A  I'm not sure.

"Q  Did you talk to him at all?

"A  No.

"Q  Have you ever seen him?

"A  No.

"Q  How did he cease representing you in these cases? Why did he not represent you throughout the proceeding?

"A  He didn't show up for court. We didn't believe him capable of defending us, I might say so we decided to defend ourselves. We thought we were capable of it.

"Q  How long were you in custody before you entered your plea?

"A  Approximately two weeks.

"Q  Did you plead guilty at that time?

"A  Yes.

"Q  To both charges?

"A  Yes."

The above testimony was at the post-conviction hearing, but when defendants Shouse and Raisley appeared earlier in the criminal cases in Enterprise, they did not claim lack of availability of appointed counsel, but rather that they did not want counsel and were fully capable of giving themselves adequate and capable representation before the court.

"SEPTEMBER 16, 1970

"DISCHARGE OF COUNSEL

"THE COURT: Which defendant is this, Sheriff?

"THE SHERIFF: This is Mr. Raisley.

"THE COURT: John William Raisley, you were previously arraigned in this court on two indictments, one for Burglary and one for Burglary Not in a Dwelling. Thereafter, you filed a request for appointment of counsel to represent you in these matters and the Court thereafter appointed Mr. Charles R. Cater of La Grande to represent you. Now I have been advised that it may be that you no longer desire to have a lawyer represent you; is this true?

"THE DEFENDANT: It is true.

"THE COURT: You desire the Court to withdraw the appointment?

"THE DEFENDANT: I do.

"THE COURT: You desire to represent yourself in this matter; is that true?

"THE DEFENDANT: I do.

"THE COURT: You fully understand that if you represent yourself you will be subject, of course, to all the rules and procedures just the same as though a lawyer were representing you; is that right?

"THE DEFENDANT: I do.

"THE COURT: Do you feel you are qualified to represent yourself in this matter?

"THE DEFENDANT: I do.

"THE COURT: There are some matters that laymen are not familiar with in the way of procedures.

"THE DEFENDANT: I have been through enough procedures and seen enough.[5]

"THE COURT: You feel you are fully capable and do desire not to have counsel with you during these proceedings; is that correct?

"THE DEFENDANT: That's correct.

"THE COURT: How old are you?

"THE DEFENDANT: Thirty-one.[6]

"THE COURT: All right. In that event, I will release Mr. Cater as your Court-appointed attorney and then expect you to represent yourself. I want to know at this time whether you are ready to enter a plea to these indictments?

"THE DEFENDANT: I am.

"THE COURT: Before entering your plea, I want to advise you you have a right to enter a plea of not guilty in which event you will be held for trial by trial jury; or you may enter a plea of guilty in which event there would be a finding and a conviction of guilt and you then would be subject to the imposition of sentence by the Court. Do you understand that?

"THE DEFENDANT: I do."

---

[5] Raisley's prior record included grand theft auto, burglary, petty theft, escape from a penal institution.

[6] In fact, he was 19 years old, which obviously was not apparent to the court or further questions would have been put to him about his age.

Raisley had also told the original arraigning circuit judge, one from another judicial district, upon arraignment that he was 30 years old without eliciting any further questions from the court as to his age.

The defendant then entered a plea of not guilty.

Colloquy between petitioner Shouse and the court on September 17, 1970:

"THE COURT: Your name is Russell Earl Shouse?

"THE DEFENDANT: Yes.

"THE COURT: Will you stand? In the matter of the State of Oregon against Russell Earl Shouse, you, together with other defendants, were arraigned upon two indictments prior to this time, one of them upon the charge of Burglary being file number 914, and one on the charge of the crime of Burglary not in a Dwelling, file number 915. I also have your application for appointment of counsel. Thereafter, I appointed counsel for you. I appointed Mr. Charles R. Cater of La Grande.

"Now, I have been advised that possibly you do not wish to have counsel. Will you advise me as to whether you wish to have counsel represent you in this matter?

"THE DEFENDANT: No, I don't.

"THE COURT: Do you intend to represent yourself?

"THE DEFENDANT: Yes, I do.

"THE COURT: Do you feel that you can give yourself adequate and proper representation?

"THE DEFENDANT: I sure do.

"THE COURT: You know there are certain rules of procedure in trial of cases that you will have to adhere to those in the same manner that a lawyer would?

"THE DEFENDANT: Yes, I sure do.

"THE COURT: You understand that?

"THE DEFENDANT: Yes.

"THE COURT: How old are you?

"THE DEFENDANT: Twenty-one.

"THE COURT: And you fully understand your rights about this? No question in your own mind that you want to proceed with this without legal counsel and representing yourself in this matter; is that right?

"THE DEFENDANT: Yes, sir.[7]

"THE COURT: All right. Then I will withdraw the appointment of Mr. Cater."

On September 21, 1970, Raisley again appeared before the court and asked to change his pleas to guilty. The court addressed the petitioner at some length, informing him of the elements of the crimes charged, the maximum sentences, and the law concerning principals and accessories. After Raisley stated that his plea was not being made on the basis of any threat or promise, the court accepted his guilty pleas.

When Shouse appeared before the court on September 17, 1970, after the court dismissed appointed counsel at petitioner's request, Shouse first declined to enter a plea and then said he would enter a plea of guilty. Before accepting his plea, the court told him he would be better off to have an attorney represent him but if he insisted on representing himself, the court would give him what assistance it could. The court then explained that the petitioner could plead not guilty and have a jury trial at which the state would have the burden of proof. After a further discussion in which the court detailed the elements of the

---

[7] Shouse testified that he had had an appointed attorney in Kansas when he was convicted of joy-riding when he was 16 or 17 and that he also had an attorney later when he pleaded guilty to escape from county jail and was sentenced to the Kansas reformatory.

crimes and maximum sentences, the court accepted his guilty pleas.

■ The most disturbing part of the record before us is the apparent period of two weeks or more which elapsed between the time of appointment of counsel and communication between appointed counsel and defendants, at which time counsel was discharged. Although it is 65 miles from La Grande to Enterprise, failure to consult with defendants within that time is unjustifiable. If the defendants at the time of entering their pleas had indicated to the court that the failure of counsel to consult with them had anything to do with their desire to plead guilty we might assume a different posture toward these cases. In fact, however, the defendants placed their desire to proceed without counsel on the basis that they were well prepared to take care of themselves. Under these circumstances it is difficult to see what further procedures the court of conviction could have pursued to further insure the voluntariness of these self-willed defendants' pleas. Based on the facts in the record before us, we hold that petitioners' pleas of guilty were understandingly and voluntarily entered by petitioners and accepted by the court.

Affirmed.