Argued November 20, affirmed December 15, 1975

JAMES JOSEPH HEUER, *Appellant, v.* CUPP
(No. 87208, CA 4773), *Respondent.*

543 P2d 45

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Donald L. Paillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

In February 1967 petitioner pleaded guilty to assault and robbery while armed, former ORS 163.-280, and was sentenced. In this proceeding seeking post-conviction relief, his principal contention is that he entered his guilty plea without knowing the maximum penalty for the offense. He also contends that he did not otherwise know the consequences of his guilty plea. The trial court denied post-conviction relief and petitioner appeals.

On February 6, 1967, petitioner was arraigned on the charge of assault and robbery while armed. He waived presentation to the grand jury and the right to counsel. He then entered a guilty plea to the district attorney's information and was sentenced. He testified in the post-conviction proceeding that he was not advised by the trial court of the maximum sentence nor did he otherwise know the consequences of his guilty plea.

■ The burden is upon the petitioner to prove the allegations of his petition by a preponderance of the evidence. ORS 138.620(2); *Bloor v. Gladden,* 227 Or 600, 603, 363 P2d 57 (1961). However, if the record of the conviction court is silent, waiver of constitutional rights is not presumed and the burden is upon the defendant warden to prove either waiver or that petitioner had knowledge of his rights. *Harris v.*

*Cupp,* 6 Or App 400, 487 P2d 1402 (1971), Sup Ct *review denied* (1972).

■■ Petitioner testified that he had no knowledge of the consequences of his plea. He testified, however, that prior to his confession he had been advised of his *Miranda* rights, which included his right to remain silent. He also testified that he had never heard of a jury trial but the conviction court record shows that when he waived grand jury indictment the court explained that the purpose of the grand jury was to determine if there was "* * * sufficient evidence to convict if the matter was brought to trial before a jury * * *." The record also included evidence showing several prior dealings of petitioner with the criminal justice system. The standard for determining the validity of a guilty plea is whether the plea was entered understandingly and voluntarily. *Raisley v. Sullivan,* 8 Or App 332, 335, 493 P2d 745, Sup Ct *review denied* (1972). The warden relied solely upon evidence presented by petitioner, which included petitioner's own testimony and the record of the conviction court. The post-conviction court found that petitioner was lying when he testified about his lack of knowledge of the maximum penalty at the time he entered his guilty plea. Petitioner responded to questions on cross-examination at the post-conviction hearing as follows:

"Q So you were very concerned what that penalty might be in Portland [another charge] if I am not mistaken?

"A Yes, but like I said I was a little confused at the time. Things were happening to—

"Q But you were really worried about what they might do to you in the pending Portland conviction?

"A The one in Portland, yes.

"Q   And that was the same crime or at least the crime charged was assault and robbery while armed with a dangerous weapon, is that correct?

"A   It was what again now?

"Q   It was the same crime, same charge as you were presently charged with in Tillamook County, is that correct?

"A   Not the exact same, no.

"Q   It was arising out of a different transaction?

"A   It was attempted, not to harm.

"Q   But you were very concerned about the charge of attempted—I'm sorry, what was the rest of the crime?

"A   Attempted robbery and assault while being armed with a dangerous weapon.

"Q   And you were very concerned about that because you didn't want to get the maximum sentence, is that correct?

"A   Right.

"Q   And while they were discussing and giving you this ultimatum, they never told you what that maximum penalty would be?

"A   No, they did not.

"Q   But you were very worried about it?
"A   Yes.

"Q   And you never thought about asking what it might be for, all you know it could have been a week?

"A   That's right.

"Q   And you didn't want to get a week's sentence?

"A   I didn't want to get the maximum whatever it was.

"Q So after they talked to you, you decided to plead guilty because you didn't want to get the maximum sentence?

"A That's right."

Later, still under cross-examination, petitioner testified:

"Q Then why did you plead guilty?

"A Why did I plead guilty? Because I was given the ultimatum.

"Q But you were guilty?

"A That's beside the point. Man would be a fool to walk in and not know what the sentence was and just plead guilty and you know, except [sic] whatever one single person decides to give him.

"Q A man would be a fool to do that, is that what you said?

"A (Witness nods head in the affirmative.)"

We agree with the trial court that this testimony produced affirmative implications that petitioner was aware of the maximum sentence at the time he entered his guilty plea.

There was evidence from which the post-conviction court could determine that the plea of guilty was voluntarily, knowingly, and understandingly made and that petitioner was untruthful in his testimony that he did not have knowledge of the maximum penalty which he could receive. Thus, the determination will not be disturbed by this court. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968).

Affirmed.