Argued and submitted February 4,
reversed March 24, 1981

## STATE OF OREGON,
### *Petitioner,*
*v.*
## ROBERT JOSEPH EVANS,
### *Respondent.*

(NO. 79-9-176, CA 16669, SC 27469)

## STATE OF OREGON,
### *Petitioner,*
*v.*
## ROBERT JOSEPH EVANS,
### *Respondent.*

(No. 79-9-177, CA 16668, SC 27469)

625 P2d 1300

Karen H. Green, Assistant Attorney General, Salem, argued the cause for petitioner. With her on the briefs were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

James J. Roberson, Portland, argued the cause and filed the brief for respondent.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson and Tanzer, Justices.

TONGUE, J.

**TONGUE, J.**

Defendant appealed to the Court of Appeals from sentences in two consolidated cases in which he had pleaded guilty to a count of prostitution in each case based upon a written plea bargain agreement which provided, among other things, that other counts in each case would be dismissed. Defendant's principal assignment of error was that the trial court erred "in failing to advise the defendant his plea of guilty could result in his being deported or denied naturalization *if he was an alien,*" as provided by ORS 135.385(2)(d).[1]

The Court of Appeals held, by a divided court, that the trial court erred in failing to so inform the defendant; that such an error was one which could be considered by it on direct appeal; that the requirement of ORS 135.385 that the defendant be so informed is "clear and mandatory"; that if conviction based on a guilty plea without being so informed is "not reversible, then that provision of the statute is not enforceable and the statute is an empty admonition to trial judges." That court then "reversed and remanded" the case, although recognizing that "our ruling creates a towering triumph of form over substance, inasmuch as—for all that appears on the record—this defendant is not an alien and the lack of a warning in this case did not harm him." 48 Or App 771, 776, 617 P2d 942 (1980). We allowed the state's petition for review.

It appears from the record that prior to defendant's plea of guilty on December 5, 1979, he was properly and fully informed of all of his rights and of the consequences of

---

[1] ORS 135.385 provides:

"(1) The court shall not accept a plea of guilty or no contest to a felony or other charge on which the defendant appears in person without first addressing the defendant personally and determining that the defendant understands the nature of the charge.

"(2) The court shall inform the defendant:

"* * * * *

"(d) That if the defendant is not a citizen of the United States conviction of a crime may result, under the laws of the United States, in deportation, exclusion from admission to the United States or denial of naturalization."

Defendant also assigned two other errors, as subsequently discussed.

his plea of guilty, not only by the provisions of the written "plea petition," but also by the trial court at the time of his plea, with the exception of the consequences of conviction *if* he was an alien. It also appears that at that time the defendant was represented by an attorney who was present at that time and made no objection or other statement to the trial court to the effect that defendant had a right to be informed of the consequences of his conviction if he was an alien. That attorney also signed a certificate attached to the "plea petition" stating, among other things, that he had explained and "discussed the matter carefully with the defendant." Finally, it appears that upon the acceptance of plaintiff's "plea petition" other charges against him were dismissed.

That attorney was also present on December 27, 1979, when the trial court reviewed the presentence report and sentenced defendant to two consecutive terms of not to exceed one year in the two cases, together with a fine of $1,000 in each case and also ordered defendant to reimburse the county for the costs of court-appointed counsel. At that time neither the defendant nor his attorney made any objection to the terms of that judgment of conviction, or to the failure of the court to previously inform defendant of the consequences of the conviction in the event that he was an alien. At that time, however, the defendant asked that the court appoint an attorney "to perfect the appeal." Nothing whatever was said as to the grounds upon which it was then contemplated that such an appeal would be taken.

Based upon stipulation at the time of oral argument in this court the record in these consolidated cases was supplemented by the presentence report dated December 24, 1979. It appears from that report that the crime to which defendant pleaded guilty involved two teenage girls. He picked up one of them as a hitchhiker, induced her and the other girl to pose for nude photographs and then offered them money and drugs for sexual intercourse, which they refused.

It also appears from the report that the defendant, a "caucasian," was born in Honolulu, Hawaii, on October 3, 1936, and that

"In 1963, Mr. Evans was convicted of Larcency (sic), and sentenced to five years probation. His probation was transferred from Honolulu, Hawaii, to Portland, Oregon, in 1963. Shortly thereafter, he was arrested for Homicide, and in 1964, convicted of that offense. He subsequently received a life sentence to the Oregon State Penitentiary. He was paroled from the penitentiary on September 15, 1971.

"Reports from his parole officer during that time, indicate that the subject was conforming to the conditions of his parole, and making progress in terms of his parole program. However, in 1974, he was arrested for Attempted Strong Arm Rape, and subsequently convicted of that offense in 1975. This resulted in a three year sentence to the Oregon State Penitentiary. As well, his parole was revoked in 1975, at which time he was returned to the penitentiary to serve additional time for his original conviction of Homicide, in 1964. Mr. Evans was again paroled on September 29, 1977. In October 1979, the subject was convicted of Prostitution, and subsequently sentenced to serve a year in the Clackamas County Jail; he is currently serving that sentence."

As previously stated, in his appeal to the Court of Appeals, defendant assigned as error the failure of the trial court "to advise the defendant that his plea of guilty could result in his being deported or denied naturalization *if he was an alien.*" Defendant's argument in support of that contention was that "[t]he terms of ORS 135.385(2)(d) are mandatory, and the court lacks discretion to give or not give this warning," citing the Oregon State Bar CLE 1979 Legislation Notebook, p 6-3; that the purpose of the statute is to protect aliens against deportation or denial of naturalization; that "the legislature believed this protection could occur only if *all* defendants in each and every case (are) given this warning," and that because the warning was not given the plea was invalid.

The response by the state in its brief to the Court of Appeals on this assignment of error was that defendant's claim of error was "not cognizable on direct appeal" and that his remedy, if any, "is in post-conviction." No contention was made by the state in that brief to the effect that defendant should have raised in the trial court the question which was assigned as error on appeal or that, in any event,

any error in failing to so inform the defendant was "harmless error." Perhaps this latter contention was not made because the presentence report showing that defendant was born in Hawaii and had a long record of previous convictions in the United States had not been included in the record on appeal.

Upon the reversal of defendant's conviction by the Court of Appeals, however, and on its petition for review, the state not only points out that "defendant did not bring this failure to the trial court's attention," but contends that any such error was "harmless error" and that by reason of Article VII (Amended), Section 3 of the Oregon Constitution[2] and ORS 19.125(2), and because any such error by the trial court by reason of ORS 135.385(2)(d) involved statutory, rather than constitutional rights, this court should reverse the decision of the Court of Appeals and affirm defendant's conviction, and that the decision by the Court of Appeals

"* * * will result in the effective creation of a rule requiring automatic reversal, regardless of the lack of prejudice, in every instance where the trial court fails to strictly obey the mandate of a statute. Such a rule will accomplish nothing more than to add to an already overburdened docket in the trial and appellate courts."

As previously stated, based upon stipulation at the time of oral argument before this court, the record of this case has since been supplemented by the addition of the presentence report, so that the record now shows defendant's place of birth and prior criminal record in the United States.

By the terms of ORS 138.050, "[a] defendant who has pleaded guilty * * * may take an appeal from a judgment on conviction where it imposes a sentence that is cruel, unusual or excessive * * *, [but][o]n such appeal the appellate court shall only consider the question whether an excessive, cruel or unusual punishment has been imposed." The Court of Appeals has held, however, by a divided court, that under some circumstances direct appeals may be taken from convictions based upon pleas of guilty. *State v. Reichert,* 39 Or App 905 (1979). When, however, the constitutional rights of such a defendant have been violated, or

_____
[2] See Page 715, infra.

when the court lacked jurisdiction to impose the judgment of conviction, he has a remedy for post-conviction relief under ORS 138.530.

We need not decide in this case whether this defendant had a right to appeal from this judgment of conviction for failure of the trial court to inform him of the consequences of his conviction *if* he was an alien because we affirm the trial court for two other reasons: (1) Defendant failed to raise that question in the trial court and, in any event, (2) any such error was "harmless error" in this case because it now appears affirmatively from the record, as supplemented, that *defendant was not an alien* and, thus being so, he would not have been prejudiced by the failure of the trial court to so inform him.

1. *Defendant's failure to raise the question in the trial court.*

In *State v. Harris,* 287 Or 335, 599 P2d 456 (1979), this court (at 337) recognized the rule that "a defendant [in a criminal case] is not entitled *as of right* to a reversal on appeal of trial court errors that were not brought to the attention of the trial court * * *," (emphasis added) saying (at 338) that "[t]he question is not one of statutory authority but of judicial administration." We stated that rule in a case involving an appeal from an allegedly improper sentence, although holding (at 339) that under the record in that case "the issue was brought to the trial court's attention." To the same effect, *see State v. Kennedy,* 250 Or 422, 423, 443 P2d 226 (1968), and *State v. Ragghianti,* 260 Or 347, 348, 490 P2d 490 (1971).

■ This reference to "judicial administration" does not mean that the institutional concerns of the courts as such can override the legal rights of defendants. Courts and their procedures exist to serve the rights of the parties that appear before them. It does mean, however, that when a rule is adopted for the orderly disposition of issues in litigation which is neither unduly technical nor burdensome, such as the rule that assertions of claims or of errors should first be presented to the trial court, strong reasons must appear before such an assertion is considered for the first time on appeal.

We believe that this rule is properly applicable in this case. This is not a case in which defendant was not represented by counsel or in which there is any claim of "egregious error" or of a violation of constitutional rights. In this case counsel was present at the time of the submission of defendant's "plea petition," at which time the trial court informed defendant of his rights and of all other consequences of his plea of guilty. Counsel was also present at the later date when the sentence of conviction was imposed. On neither occasion was the failure of the trial court to inform defendant of the consequences of his plea *if* he were an alien "brought to the trial court's attention" by counsel. Neither did defendant file in the trial court a motion to set aside the judgment of conviction.

It is possible that neither defendant nor his counsel were then aware of the provisions of ORS 135.385. It is also possible, however, that they were fully aware of the provisions of that statute and chose to remain silent. In any event, what defendant now seeks is to have the benefit of his plea bargain now that the other charges against him have been dismissed and to nevertheless challenge the validity of his conviction based upon a contention which was "not brought to the attention of the trial court." As held by this court in *Harris, supra,* the question thus presented is not one of statutory authority, but of judicial administration.

■ We hold that as a matter of judicial administration in criminal cases a defendant represented by counsel who makes a plea bargain and then pleads guilty, but is not informed by the trial judge of the consequences of his conviction in the event that he is an alien and who does not raise that question in the trial court, cannot raise that question for the first time on appeal. This does not mean that the statute does not make it incumbent upon trial judges to give the required advice regardless of whether there is any known reason to doubt a defendant's citizenship. The legislature may well have meant to assure that defendants receive this warning without having to disclose anything about their status in this country--a matter which concerns other laws and possible exposure under them than the law which brought the defendant before the trial court.

Here we are concerned only with the effect of a failure to give the advice which was not brought to the trial court's attention and which is not shown to have caused any prejudice to defendant in his decision to plead guilty.

## 2. *Any error was "harmless error."*

In *State v. McLean,* 255 Or 464, 468 P2d 521 (1970), this court affirmed a criminal conviction despite error by the trial court, properly excepted to in the trial court, holding that under the record in that case the error was "harmless error." In doing so this court chose (at 474) to exercise the powers conferred upon it by Article VII (Amended), Section 3 of the Oregon Constitution, which provides that:

> "If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding *any error* committed during the trial; * * *." (Emphasis added).

After reviewing its previous decisions and those by the Supreme Court of the United States, this court held (at 479) that this constitutional provision authorizes it to affirm criminal convictions despite error by the trial court if the error

> "* * * was either so technical in nature or so unsubstantial that this court can affirmatively find, as a practical matter, that there was 'little, if any, likelihood of having changed the result of the trial', this court may then, in its discretion, exercise its power to affirm the verdict and judgment of the trial court, notwithstanding the existence of such error."

We also said in that case (at 476-77) that:

> "In view of 'the troubled times in which we live today,' this court has no reason to believe that the legislature or the people of Oregon now have any desire that this court should hesitate to exercise the powers conferred by these mandates. Indeed, the purpose to be served by these statutory and constitutional provisions is now of particular importance, in view of the unfortunately increasing technicalities of modern criminal law which make it most difficult for a judge today to conduct the trial of a criminal

case of any considerable importance, complexity and length without error of some kind or degree."[3]

More recently, in *State v. Stilling,* 285 Or 293, 590 P2d 1223 (1979), this court held (at 304) that even federal constitutional error can be "harmless" when the court is "able to declare a belief that it was harmless beyond a reasonable doubt."

It may be that all errors in criminal cases are presumed to be prejudicial, with the result that error cannot be said to be "harmless" unless any such presumption is overcome. *Cf. State v. McLean, supra,* at 478. We believe, however, that the record in this case, as now supplemented by the presentence report, is sufficient to overcome any such presumption and also to satisfy the requirements of that rule as stated by this court in both *McLean* and *Stilling.* Not only does defendant make no contention that he was in fact an alien at the time of his conviction in this case, but it clearly appears from the record, in our opinion, that he was not then an alien. The presentence report states that defendant was a "caucasian" born in Honolulu, Hawaii, in 1936. Although Hawaii was then a territory of the United States, it is conceded that he was born a citizen of the United States.

It also appears from the presentence report that defendant was convicted of crimes beginning in Hawaii in 1958 and continuing in Oregon in 1963, 1964, 1975 and 1979. Had he been an alien at the time of any of those convictions he would presumably have been deported from the United States.[4]

■ Under these facts and on this record we hold that any error by the trial court in not informing defendant of the consequences of his plea of guilty *in the event that he was an alien* was not prejudicial error, but that any such

---

[3] The requirements imposed by statute upon the receiving of pleas of guilty in criminal cases, particularly those based upon plea bargaining, are such as to make even those proceedings "technical and complex." *See, e.g.,* ORS 135.375, 135.385, 135.390, 135.395, 135.405, 135.425 and 135.432.

[4] As previously noted, it is because of the stipulation of the parties that the presentence report may be considered by this court in its decision of this case.

error was "either so technical in nature or so unsubstantial" as to authorize this court to exercise the power conferred upon it by Article VII (Amended), Section 3 of the Oregon Constitution, as construed by this court in *State v. McLean, supra,* at 479, to affirm the conviction of this defendant notwithstanding any such error.[5]

Defendant also assigned as error in his appeal to the Court of Appeals that:

"By imposing upon the defendant the requirement that he reimburse Clackamas County for the costs of his court appointed counsel, the court imposed an illegal sentence because of the failure of the court to give the defendant any notice, and therefore to deny to him a fair opportunity to be heard in opposition to the imposition of these costs."

According to the presentence report:

"Mr. Evans lists as assets an automobile, worth $800; a home valued at $42,000; and his wife's monthly salary of $1200. Liabilities include $331 per month home payments; loans and bills, amounting to $7,000; and an unknown amount in attorney's fees."

If this statement was accurate, the trial court acted properly in requiring defendant to reimburse the county for attorney fees paid by it to court-appointed counsel. See ORS 161.665(3).[6]

Defendant cites *Stacey v. State of Oregon,* 30 Or App 1075, 569 P2d 640 (1977), for the proposition that he was entitled to notice before the imposition of the costs of

---

[5] We have not overlooked our previous decision in *State v. Carsner,* 289 Or 645, 616 P2d 491 (1980), in which this court held that compliance with ORS 137.079, requiring that a copy of a presentence report be provided a defendant, is mandatory, even when the defendant, who was not represented by an attorney, was illiterate and the report had been read to him. *Carsner* is distinguishable from the present case in that failure to provide a presentence report to such an illiterate defendant might well have been prejudicial because such a report could have been examined by and discussed with friends or an attorney. In this case, however, defendant was not only represented by an attorney, but no benefit could be derived from defendant's being informed of the consequences of a guilty plea *if* he were an alien because he was in fact not an alien.

[6] ORS 161.665(3) provides:

"The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."

his defense. That case is not in point, however, not only because it arose on a petition for post-conviction relief, but because in that case it was alleged that the trial court *in the absence of either defendant or his attorney* added a condition of probation requiring the payment of retaining an attorney for the defendant.

In this case, however, defendant and his attorney were both present when the sentencing, with this requirement, was imposed and thus had ample oportunity to object at the time of sentencing to the imposition of that requirement, including lack of advance notice. They chose not to do so. Neither did defendant file any subsequent motion in the trial court to strike or otherwise challenge that requirement or the judgment of conviction. For reasons previously stated, we hold that under these facts, and as a matter of judicial administration, the defendant will not now be heard to complain of such an alleged error for the first time on appeal.

For reasons previously stated, the decision of the Court of Appeals is reversed and the judgment of conviction of the defendant is affirmed.