Argued and submitted August 5, 1983, remanded with instructions February 8, respondent's reconsideration denied March 30, appellant's reconsideration denied April 27, petitions for review allowed June 26, 1984 (297 Or 339) See 298 Or 554, 694 P2d 969 (1985)

# LYONS,
## *Appellant,*

*v.*

# PEARCE,
## *Respondent.*

## (82-12-38974; CA A27171)

676 P2d 905

Clint A. Lonergan, Portland, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

Newman, J., concurring in part; dissenting in part.

## RICHARDSON, P. J.

Petitioner appeals from a judgment denying his petition for post-conviction relief. He argues that his guilty plea was not knowingly, intelligently and voluntarily made, because he was not fully informed of the consequences of his plea and that he was denied the effective assistance of counsel. He argues that he was denied rights under Article I, sections 10 and 11, of the Oregon Constitution, the Fourteenth Amendment to the United States Constitution and ORS 135.385. Petitioner is an alien and a citizen of Jamaica, and because of his conviction he faces possible deportation. See 8 USC §1251(a)(4). Petitioner did not appeal from the conviction but filed a petition for post-conviction relief.

Petitioner personally appeared in the Multnomah County Circuit Court, with counsel, to plead to the charge of theft of unemployment benefits. ORS 164.055. In that court, the petitioner must read and sign a plea petition before the court will accept a guilty plea. The plea petition form also contains a certification of petitioner's counsel. Before accepting his guilty plea, the trial judge asked petitioner if he had read the plea petition. Petitioner said no. The court asked him if he could read, and he said yes. The court instructed him to confer with his counsel and read the petition.

Following a recess, during which petitioner and his counsel conferred, this exchange took place between the court and petitioner:

"Q [By the Court]: All right, Mr. Lyons, you have had an opportunity to read the petition in full?

"A: Yes.

"Q: And you still wish to enter a plea?

"A: Yes.

"Q: Are you under the influence of alcohol or any drug at the present time?

"A: No.

"Q: And you are fully aware that you have a right to have a jury trial, if you should wish to do so?

"A: Yes.

"Q: Let me put it this way: If you enter a plea, there will be no trial.

"A: I understand that.

"Q: And what you want to do is to enter a plea by signing the petition; is that correct?

"A: Yes.

"THE COURT: Then, based on this representation, I am satisfied that this is a decision that Mr. Lyons has made after consultation with his attorney and that it is a voluntary decision on his part, and I will allow him to withdraw his plea of not guilty and ask him how he pleads to the charge of Theft in the First Degree?

"THE [PETITIONER]: Guilty."

The court then accepted petitioner's guilty plea. The United States later commenced deportation proceedings.

At the post-conviction hearing, the court stated:

"Now, the transcript — First of all, with respect to the advice to the Defendant that, if he is not a citizen of the United States, conviction of a crime may result in deportation from, admission to the United States or denial of naturalization, the material which is typed in bold face at the bottom of the first page of the petition to enter a plea of guilty. That statute was enacted by the 1977 legislature, and, as I recall — and immediately produced litigation, and it resulted in a substantial number of legislative hearings before the Judiciary Committee of, I believe, both the House and the Senate in 1979.

"At that time, the Judiciary Committees of both Houses, I am satisfied, were fully aware that the way in which this particular warning was handled, as well as a multitude of other constitutional warnings which have been engrafted on our judicial procedure, particularly in this County — are handled by having a formal plea petition which is given to the Defendant to read, to discuss with his attorney, to sign. And I am satisfied from the legislative history as I know it that no one ever expected the plea petition to be read by the Court to the Defendant. It is the responsibility of Counsel to see that that petition is read, or, if not read in full, fully understood.

"It is the responsibility of the Court to question the particular Defendant and, if necessary, his counsel, to satisfy himself that the petition has been read in full, or, if there is a problem with reading that it has been explained in full, in all of its details, by Counsel to the Defendant.

"* * * * *

"Now he says he hadn't read it. I told him to read it, sent him back with his attorney to read it; he came back before the Court, and he entered a plea.

"I think any reasonable authority on judicial procedure would say that, if the Defendant did not read the petition with that material on the bottom of the first page at that time after being sent back by the Court for the express purpose of doing so, and then coming back before the Court, making the kind of representations he did, that is a knowing and voluntary waiver and, indeed, a deception and fraud on the Court.

"I am satisfied that it is inappropriate to set aside the plea, and I decline to do so for the reasons stated.

"That will be the order of the Court."

ORS 135.385 provides in material part:

"(1) The court shall not accept a plea of guilty or no contest to a felony or other charge on which the defendant appears in person without first addressing the defendant personally and determining that the defendant understands the nature of the charge.

"(2) The court shall inform the defendant:
"* * * * *

"(d) That if the defendant is not a citizen of the United States conviction of a crime may result, under the laws of the United States, in deportation, exclusion from admission to the United States or denial of naturalization."

The court did not orally advise petitioner in open court that his conviction could result in his deportation. It relied on petitioner's affirmative response to the court's question whether he had had "the opportunity to read" the plea petition in full.[1] At the post-conviction hearing, petitioner testified that when he signed the plea petition and pled guilty, he did not know that his conviction could result in deportation. He testified that he had not read the plea petition during the recess. He also testified that his appointed counsel had not discussed with him the possiblity of deportation. That attorney testified that he did not advise petitioner of the possibility of deportation.

---

[1] Unlike ORS 135.070 (rights at a preliminary hearing) and ORS 135.385(1) (ensuring that a defendant understands nature of the charge), ORS 135.385(2) does not specifically require a judge orally to inform a defendant of his rights. This court has declined to "impose a rigid formula" for accepting guilty pleas, preferring that a judge have "sufficient latitude to tailor his questions to the needs of the defendant before him." *Raisley v. Sullivan,* 8 Or App 332, 336, 493 P2d 745, *rev den* (1972). However, the legislature has placed on the court the ultimate responsibility to ensure that defendants are informed of the rights in ORS 135.385(2). The trial court did orally inform petitioner in open court of some of these rights, but not that deportation might result from his conviction.

■     The initial inquiry is whether petitioner can seek post-conviction relief on his first claim that the court did not inform him that, if he were an alien, he might be subject to deportation. ORS 138.530 provides:

> "(1)   Post-conviction relief pursuant to ORS 135.510 to 138.680 shall be granted by the court when one or more of the following grounds is established by the petitioner:
>
> "(a)   A substantial denial in the proceedings resulting in petitioner's conviction, or in the appellate review thereof, of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void."

Petitioner contends that the failure of the court to advise him as required by ORS 135.385(2)(d) violated his rights under the Fourteenth Amendment to the United States Constitution and Article I, sections 10 and 11, of the Oregon Constitution, because his plea was not a knowing, intelligent act. In *Boykin v. Alabama,* 395 US 238, 89 S Ct 1709, 23 L Ed 2d 274 (1969), the Court held that, when a trial court accepts a guilty plea that is not "intelligently and understandably" made, the defendant's rights under the Due Process Clause of the Fourteenth Amendment have been violated. In Oregon there is a constitutional right to be advised of the basic legal consequences of a guilty plea. *Fletcher v. Cupp,* 1 Or App 467, 463 P2d 365 (1969), *rev den* (1970). In order to determine if the failure to give certain advice to a defendant prior to his plea of guilty violates either constitution we must determine if the particular advice is mandated by either constitution.

In *Jones v. Cupp,* 7 Or App 415, 490 P2d 1038 (1971), *rev den* (1972), the petitioner in a post-conviction proceeding sought to set aside his guilty plea to murder. One result of the conviction was that he would not be eligible for parole for seven years. He was not advised of the parole limitation at the time he entered his plea of guilty. We rejected the petitioner's argument that failure of the trial court to advise him of that fact deprived him of rights under the state and federal constitutions. We said:

> "It is necessary to draw a line as to what must be told a defendant as the 'basic legal consequences' of his plea of guilty. The cases seem to agree that effects such as loss of passport, deportation, loss of voting privileges and undesirable discharge are 'too remote.' * * *" 7 Or App at 419.

We concluded that pleading guilty without being informed as to parole ineligibility raises no constitutional issues and is not a basis for post-conviction relief.

*Gaffey v. State of Oregon,* 55 Or App 186, 637 P2d 634 (1981), also involved a petition for post-conviction relief. The petitioner had pleaded guilty to reckless driving. She contended that her state and federal constitutional rights were violated, because the trial court had failed to advise her that one of the consequences of a conviction for reckless driving is the mandatory suspension of her driver's license by the Motor Vehicles Division. We held, citing *Jones v. Cupp, supra,* that mandatory suspension of a driver's license is not a basic legal consequence of which the defendant must be advised in order to make a constitutionally acceptable plea of guilty.

■ In those cases we interpreted the provisions of both the state and federal constitutions, as they relate to guilty pleas, to require the trial court to advise the defendant of the direct legal consequences of the plea. We listed loss of passport and deportation as remote consequences not covered by the constitutional mandates. Although categorizing loss of a passport and deportation as collateral consequences of a conviction was dictum in *Jones* and *Gaffey,* we now hold that the failure to advise a defendant of possible deportation does not violate either the state or federal constitution.

■■ Petitioner argues that ORS 135.385 was adopted in response to *Boykin v. Alabama, supra,* and that the statutory requirements were intended by the legislature to be included in the constitutional requirements for a valid guilty plea. The interpretation of constitutional provisions is a judicial, not a legislative, function. The legislature cannot overrule a judicial interpretation of the constitution or amend the constitution by adopting a statute. The legislature may proscribe or prescribe certain actions by a statute, but a violation of the statute does not also violate the relevant constitutional provisions.

A plea of guilty, to be valid, must comply with ORS 135.385. Petitioner is foreclosed from raising a statutory issue in a post-conviction proceeding. ORS 138.530. Because we hold that failure to inform a defendant of the possibility of deportation as required by ORS 135.385(2)(d) does not violate

the state or federal constitutions, petitioner has failed to allege a basis for post-conviction relief in his first claim.

■■ Petitioner's second claim for post-conviction relief is that he was denied effective assistance of counsel, because the attorney representing him at the time of his plea

"* * * failed to inform Petitioner that a plea to the above charge would result in his deportation."

Unlike the first claim, an allegation of ineffective assistance of counsel is cognizable in a post-conviction proceeding. The court in the post-conviction trial did not specifically address this claim. There was a conflict in the evidence as to what petitioner's attorney advised him regarding the potential for deportation and a question as to whether that attorney's representation met the professional standards described in *Krummacher v. Gierloff,* 290 Or 867, 627 P2d 458 (1981). It is necessary to remand in order for the trial court to address the claim which is limited to the allegation of the petition. *Gaffey v. State of Oregon, supra.*

Remanded for determination of claim of ineffective assistance of counsel.

**NEWMAN, J.,** concurring in part; dissenting in part.

I concur with the majority insofar as it remands to the trial court to "address the claim of ineffective assistance of counsel."[1] Petitioner testified that his appointed counsel had not discussed with him the possibility of deportation. The attorney testified that he did not advise petitioner just before his plea of that possibility. The attorney also did not sign the certification attached to the plea petition that he had explained its effect and that it was "understandingly made."

The record shows, moreover, that the printed text of the plea petition that petitioner signed is garbled. It recites, in bold type:

"THIS IS TO ADVISE YOU IF YOU ARE NOT A CITIZEN OF THE UNITED STATES, CONVICTION OF A CRIME MAY RESULT IN DEPORTATION FROM

---

[1]The majority opinion states that the court shall address the claim "which is limited to the allegation of the petition." 66 Or App at 784. The allegation is that counsel "failed to inform the petitioner that a plea to the above charge would result in his deportation."

ADMISSION TO THE U.S.A. OR DENIAL OF NATU-RALIZATION."

That language is not what ORS 135.385(2)(d) provides. Conviction may not result in "deportation from admission" to the United States, but rather deportation from the United States.[2] In an affidavit, defendant stated:

> "Although there was a notice on the bottom of the plea petition which I signed indicating that an entry of a plea of guilty could render me deportable, I did not understand the meaning of said language. Neither my attorney nor the court attempted to clarify said language."

Under these circumstances, it was even more important that counsel have advised petitioner just before he made his plea that his conviction could result in his deportation.

I would, however, also remand the case to the trial court to consider further an additional ground petitioner raised for post-conviction relief—whether he knowingly and intelligently entered his guilty plea when the court had not informed him that conviction could result in his deportation. Petitioner asserts that failure of the court to advise him, as required by ORS 135.385(2), that as an alien his conviction could result in his deportation violated his rights under the Fourteenth Amendment and Article I, sections 10 and 11, of the Oregon constitution.

The majority recognizes that, in Oregon, there is a constitutional right to be advised of the "basic legal consequences" of a guilty plea. 66 Or App at 782. The majority relies, however, on *Jones v. Cupp,* 7 Or App 415, 490 P2d 1038 (1971), *rev den* (1972); and *Gaffey v. State of Oregon,* 55 Or App 186, 637 P2d 634 (1981), to hold that failure to advise an alien of possible deportation is not failure to advise of a basic legal consequence" of a guilty plea. I disagree.

*Jones* concerned the court's failure to advise of parole eligibility. *Gaffey* concerned the court's failure to advise of suspension of a driver's license. Neither concerned the court's failure to advise an alien that his guilty plea could result in deportation.

ORS 135.385(2), first enacted in 1973, now provides:

---

[2]The printed form of plea petition used in Multnomah County should be corrected.

"(1)    The court shall not accept a plea of guilty or no contest to a felony or other charge on which the defendant appears in person without first addressing the defendant personally and determining that the defendant understands the nature of the charge.

"(2)    The court shall inform the defendant:

"(a)    That by a plea of guilty or no contest the defendant waives the right:

"(A)    To trial by jury;

"(B)    Of confrontation; and

"(C)    Against self-incrimination.

"(b)    Of the maximum possible sentence on the charge, including the maximum possible sentence from consecutive sentences.

"(c)    When the offense charged is one for which a different or additional penalty is authorized by reason of the fact that the defendant may be adjudged a dangerous offender, that this fact may be established after a plea in the present action, thereby subjecting the defendant to different or additional penalty.

"*(d)    That if the defendant is not a citizen of the United States conviction of a crime may result, under the laws of the United States, in deportation, exclusion from admission to the United States or denial of naturalization.*" (Emphasis supplied.)

The legislature added subsection (d) in 1979 (Or Laws 1979, ch 118, § 1).

Of course the interpretation of constitutional provisions is, as the majority states, a judicial function, and the legislature cannot "amend the constitution by adopting a statute." 66 Or App at 783. The question here, however, is whether, for an alien, deportation is a "basic legal consequence." The dictum in *Jones* and *Gaffey* is not a "judicial interpretation" that settles this question.

Subsection (d) recognizes the fundamental importance of deportation to an alien. The legislative declaration is entitled to weight, particularly when the legislation added subsection (d) to a list of such fundamental rights as trial by jury, confrontation and freedom from self-incrimination. I can think of no consequence more basic to an alien than deportation, which is the equivalent of banishment or exile. *See Fong Haw Tan v. Phelan,* 333 US 6, 10, 68 S Ct 374, 92 L Ed 433 (1954). It may result, to use the words of Justice Brandeis, in

loss "of all that makes life worth living." *See Ng Fung Ho v. White,* 259 US 276, 284, 42 S Ct 492, 66 L Ed 938 (1921) (Brandeis, J.); *United States v. Parrino,* 212 F2d 919, 924-925 (2nd Cir) (Frank, J., dissenting), *cert den* 348 US 840 (1954).[3] Under 8 USC §1251(a)(4), the United States may deport an alien who is twice convicted of a crime involving moral turpitude. If deported, an alien loses all constitutional rights afforded by the Oregon and United States constitutions, including trial by jury, confrontation and freedom from self-incrimination. I would hold that, if the court failed to inform petitioner that his conviction could result in deportation, it did not advise him of a basic legal consequence of his plea.[4] Accordingly, if the court did not so advise petitioner, he did

---

[3] Judge Frank's dissent stated:

"Deportation, while not literally constituting criminal punishment, may have far more dire effects on this defendant than his sentence of imprisonment for two years. For all practical purposes, the court sentenced him to serve (a) two years in jail and (b) the rest of his life in exile. For the Supreme Court has said that 'deportation is a drastic measure, at times the equivalent of banishment or exile' and 'is a penalty.' Mr. Justice Jackson has described it as 'a life sentence of banishment.' I cannot believe that no 'manifest injustice' exists merely because the sentence of banishment for life was not imposed directly by the judge." *United States v. Parrino, supra,* 212 F2d at 924.

[4] *State v. Evans,* 290 Or 707, 625 P2d 1300 (1982), is not authority to the contrary. The defendant, a non-alien, took a direct appeal after pleading guilty to a prostitution charge after a plea bargain. He did not raise a constitutional claim, but asserted that his plea of guilty should not have been accepted, because the court failed to advise him under ORS 135.385(2)(d). This court held that a failure to advise the defendant under 135.385(2)(d) was cognizable on direct appeal, explaining:

"It is true, as the state points out, that this court has previously and specifically held that a defendant's claim that his guilty plea should be set aside on the ground that the trial court failed to advise him of a consequence of his plea could not, by virtue of ORS 138.050, be considered on direct appeal. *State v. Ferren,* 3 Or App 224, 473 P2d 165 (1970). However, *Ferren* involved the right to be told of a direct consequence of the plea—the maximum sentence. This is a consideration of constitutional significance. *Jones v. Cupp,* 7 Or App 415, 417, 490 P2d 1038 (1971), *rev den* (1972), and therefore cognizable under post conviction relief. ORS 138.530(1)(a). *By contrast, defendant's right to be advised here is statutory only and not cognizable under post conviction relief. See, e.g., Jones v. Cupp, supra.* If the right is to be enforced at all, it must be enforced by direct appeal." (Emphasis added.) 48 Or App at 774-75.

In reversing, the Supreme Court stated:

"We hold that as a matter of judicial administration in criminal cases a defendant represented by counsel who makes a plea bargain and then pleads guilty, but is not informed by the trial judge of the consequences of his conviction in the event that he is an alien and who does not raise that question in the trial court, cannot raise that question for the first time on appeal." 290 Or at 714.

not knowingly and intelligently make his guilty plea and was deprived of his rights under Article I, sections 10 and 11, of the Oregon constitution. Such a claim may be raised by a petition for post-conviction relief. ORS 138.530(1)(a).

The court did not orally advise petitioner that his conviction could result in his deportation but gave him an opportunity to read the plea petition and confer with counsel. It relied on petitioner's subsequent advice to the court that he had conferred with counsel and had had an "opportunity to read" the petition. At the trial of this post-conviction proceeding, the court clearly was unaware that the plea petition contained a garbled version of ORS 135.358(2)(d). Petitioner asserts that he was unaware of its meaning. Although the plea petition may be sufficient to place a person on notice to inquire, petitioner, as far as we know on this record, did not inquire. Moreover, to be informed in order to make a knowing and intelligent plea is not simply to be placed on inquiry. The trial court should address the question of whether petitioner was informed when he entered his plea of a basic legal consequence of that plea—that his conviction could result in his deportation.

---

The Supreme Court also stated:

> "We need not decide in this case whether this defendant had a right to appeal from this judgment of conviction for failure of the trial court to inform him of the consequences of his conviction *if* he was an alien because we affirm the trial court for two other reasons: (1) Defendant failed to raise that question in the trial court, and, in any event, (2) any such error was "harmless error" in this case because it now appears affirmatively from the record, as supplemented, that *defendant was not an alien* and, thus being so, he would not have been prejudiced by the failure of the trial court to so inform him." 290 Or at 712-13. (Emphasis in original.)

*Evans* is, accordingly, distinguishable. Contrary to the facts in *Evans,* petitioner here is an alien, faces deportation because of his conviction and raised the constitutional claim by post-conviction proceedings.