Argued and submitted August 29, affirmed December 12, 1984, reconsideration denied
January 25, petition for review denied February 20, 1985 (298 Or 705)

## STATE OF OREGON,
*Respondent,*

*v.*

## KIRK WILLIAM GORDON,
*Appellant.*

(82122900; CA A30684)

692 P2d 618

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Roy Pulvers, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

Young, J., dissenting.

## VAN HOOMISSEN, J.

Defendant appeals his convictions on two counts of possession of a controlled substance. ORS 475.992(4). He contends that the trial court erred in denying his motion to suppress evidence seized as a result of warrantless searches of his vehicle and its contents. We affirm.

An undercover deputy sheriff bought drugs from Metzker, the owner of a truck rental agency in Albany. Metzker told the deputy that he was expecting a shipment of cocaine from Eugene that day. He intended to sell some of it to the deputy. Later, deputies obtained a warrant to search Metzker's office for controlled substances. The warrant was executed about 11:30 a.m. During the search, deputies found cocaine behind Metzker's desk. The deputies remained on the premises. Detective Parrott, who was in charge, answered all incoming phone calls.

Early in the afternoon, a man phoned and asked for Metzker. Parrott told him that Metzker was unavailable.[1] The same man called again about 4 p.m., identifying himself as "Kirk." Parrott told him that Metzker could not come to the phone. The man said that he had something for Metzker. Parrott told him again that Metzker could not come to the phone. The man said that he had some "stuff" for Metzker, and he asked if Metzker had any "stuff" for him. Parrot testified that, in the drug world, the word "stuff" is used to indicate a controlled substance. Parrott answered affirmatively. The man said that he would be right over. Forty-five minutes later, defendant arrived at Metzker's office in a van. Parrott approached the van. He identified himself and asked defendant for identification. Defendant's proffered identification showed that his name was "Kirk." Parrott advised him of his *Miranda* rights. Defendant agreed to talk but gave no indication that he was the man with whom Parrott had spoken on the phone. He explained that he was there to sweep Metzker's chimney. That was his trade, and his van contained tools for that purpose. There was only a woodstove inside Metzker's office with a stovepipe venting outside.

Defendant remained in his van. He refused Parrott's

---

[1] In fact, by that time Metzker had been taken to jail.

request for consent to search it. Parrott told defendant that he had probable cause to believe that defendant was delivering a controlled substance and that he was going to search the van. He ordered defendant out of the van. Deputy Holm frisked him for weapons. He found a small wooden object in defendant's pocket that he could not identify. He returned it to defendant.

Deputy Severns found a briefcase in the van. On opening it, he discovered a plastic baggie containing more than an ounce of marijuana. Defendant was then formally arrested. As he took his hand from his pocket, the small wooden object Holm had discovered earlier fell to the ground. Holm retrieved it. It was later, found to contain cocaine. That night, Parrott searched the briefcase thoroughly. He found several small containers in it containing cocaine.

■      Defendant argues first that the deputies lacked probable cause to search his van.[2] Next, he argues that, even if they had probable cause to search his van, the warrantless search of his briefcase was unlawful.[3] He relies on both the state and federal constitutions. The trial court found there was probable cause and exigent circumstances to search the van and that the search of the briefcase was "permissible."[4]

---

[2] In this court, defendant also argues that his initial encounter with the deputies, including the request that he identify himself, was an unlawful stop. *See* ORS 131.615. He did not make that argument below. Therefore, we will not consider it. *See State v. Evans,* 290 Or 707, 713, 625 P2d 1300 (1981); *overruled on other grounds State v. Clevenger,* 297 Or 234, 246, 683 P2d 1360 (1984); *State v. Hickmann,* 273 Or 358, 540 P2d 1406 (1975).

[3] Defendant makes no claim that there was a logical stopping point at which the deputies should have ceased their search and sought a warrant. He makes no issue of the delayed search of the briefcase, other than attacking it as a search of a closed container.

[4] The trial court found:

"[T]hat the officers had probable cause to believe that the defendant's van would contain controlled substances.

"Up until the time of the contact with the police officers and the search the defendant had complete control of his vehicle. It must also be assumed that until the time of his arrest he had control of the vehicle. There were exigent circumstances which required prompt response.

"The next issue is whether search of the brief-case was permissible. I hold that it was. The nature of the contraband sought requires the opening of containers. It is very unlikely that controlled substances are going to be left in the open in a van. It does not make sense to authorize the search and in the next

We address defendant's state constitutional arguments first. *See State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983). In *State v. Flores,* 68 Or App 617, 635, 685 P2d 999, *rev den* 298 Or 151 (1984), we held that

> "[s]earches incident to arrest are the primary justification for warrantless searches of the person. If the officer is without probable cause to arrest a person, the officer is without probable cause to search him, for a search of the person necessarily implies an arrest."

*Flores* involved the search of the defendant's automobile and his person. *See also State v. Krogness,* 238 Or 135, 388 P2d 120, *cert den* 377 US 992 (1964).

It is apparent that automobile searches will often occur in the context of an arrest. We have analyzed automobile searches under the probable cause, exigent circumstances and incident-to-arrest criteria in two cases since *Flores. See State v. Brody,* 69 Or App 469, 686 P2d 451 (1984); *State v. Kirsch,* 69 Or App 418, 686 P2d 446, *rev den* 298 Or 151 (1984). In each case we held that the fact that the defendant was under arrest and that the police were in control of the situation meant that there was no exigency that justified searching without a warrant, even though there may have been probable cause for the search. However, in each case we upheld the search as incident to the defendant's arrest. Thus it appears that the latter analysis will normally be the appropriate one for a search of an occupied automobile. *See* ORS 133.005(1); *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982); *State v. Krogness, supra; State v. Chinn,* 231 Or 259, 373 P2d 392 (1962); *State v. Flores, supra.* Here, the information supporting a belief that there was contraband in the van necessarily supported a belief that defendant possessed it. His detention during the search was in fact an arrest, although he was not formally arrested until later.[5] The question then is

---

breath say they can't do the things necessary to find the contraband sought.

"Based upon the findings indicated, I hold that the search of the defendant's vehicle did not violate his rights under the Constitutions of the State of Oregon or the United States."

[5] It is irrelevant whether Parrott considered defendant to be under arrest. His action and that of the other deputies was a sufficient restraint so that defendant was effectively arrested. It is also irrelevant whether Parrott believed that he had probable cause to arrest defendant, if, in fact he did. *See State v. Cloman,* 254 Or 1, 12, 456 P2d 67 (1969).

whether the search of defendant's van was permissible incident to his arrest.

■ We agree with the trial court's conclusion that the totality of the circumstances described in our statement of the facts gave Parrott a substantial objective basis for believing that, more likely than not, an offense had been committed and that defendant had committed it. ORS 131.005(11). Parrott therefore had authority to arrest defendant. ORS 133.310(1)(a).

■ A search incident to arrest must be related to the crime for which the defendant was arrested and must be reasonable in time, scope and intensity. *State v. Caraher, supra; State v. Chinn, supra; State v. Flores, supra.* Defendant was under arrest for a crime of possession. The basis for that arrest was Parrott's reasonable belief that defendant was transporting contraband in his van. That is different from the situation in *State v. Flores, supra,* where the officer found marijuana on the person of a driver stopped for an unrelated reason and did not search the entire passenger compartment of the automobile until after he had found additional contraband near the driver's seat. Here, Parrott believed that defendant was a drug courier making a delivery. Under the circumstances, a full search of the van for contraband was related to the crime for which he was arrested and was reasonable in time, scope and intensity. That the deputies opened closed containers in the course of their search does not affect the legality of their actions if it was reasonable to believe that contraband might be found in the containers and if the other *Chinn/Caraher* criteria were met.[6] Here, what the

---

[6] Defendant's reliance on *State v. Groda,* 285 Or 321, 591 P2d 1354 (1979), is misplaced. In *Groda,* the Supreme Court held that, even though the police had authority to search the defendant's car after his arrest, they did not have authority without a warrant to open and search his briefcase found in the car. *Groda* relied on *United States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 L Ed 2d 538 (1977). However, the problem in *Chadwick* was somewhat different, so it was not directly in point. *Groda* was, therefore, an attempt by the Oregon Supreme Court to anticipate what federal constitutional law would be. As it turned out, the prediction, while reasonable, was wrong.

In *United States v. Ross,* 456 US 798, 825, 102 S Ct 2157, 72 L Ed 2d 572 (1982), the Supreme Court held that, if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *See also New York v. Belton,* 453 US 454, 460-63, 101 S Ct 2860, 69 L Ed 2d 768 (1981). *Ross,* in effect, overruled *Groda* as a statement of

deputies were searching for would most likely be found in a closed container. It was reasonable for them to look where they did and to open the closed containers. We conclude that the searches of defendant's briefcase and closed containers were permissible as incident to a lawful arrest.[7] The searches violated neither the Oregon Constitution nor the United States Constitution. *United States v. Ross, supra* n 6; 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982); *New York v. Belton, supra* n 6; *State v. Caraher, supra.*[8] The trial court did not err in denying defendant's motion to suppress.

Defendant also appeals the trial court's order forfeiting his vehicle to the state. *See* ORS 167.247(2). The forfeiture was lawful.

Affirmed.

**YOUNG, J.,** dissenting.

For the reasons expressed in my dissents in *State v. Kirsch,* 69 Or App 418, 424, 686 P2d 446, *rev den* 298 Or 151 (1984); *State v. Flores,* 68 Or App 617, 640, 685 P2d 999, *rev den* 298 Or 151 (1984); and *State v. Fesler,* 68 Or App 609, 614, 685 P2d 1014, *rev den* 297 Or 547 (1984), I dissent.

---

federal constitutional law. *See Armstrong v. Cupp,* 69 Or App 463, 685 P2d 1029, *rev den* 298 Or 238 (1984). Nor is *Groda* a correct statement of Oregon constitutional law. *See State v. Kirsch, supra.*

[7] Defendant raises no issues concerning the *testing* of the materials seized, as distinguished from their seizure. *See United States v. Jacobsen,* ____ US ____, 104 S Ct 1652, 80 L Ed 2d 85 (1984); *State v. Lowry,* 295 Or 337, 345, 667 P2d 996 (1983); *State v. Flores, supra,* 68 Or App at 638 n 12.

[8] In *State v. Caraher, supra,* the Supreme Court said:

"*Chinn, Krogness* and *O'Neal* have expanded the justification for a search incident to arrest beyond considerations of the officer's safety and destruction of evidence. They permit a search when it is relevant to the crime for which defendant is being arrested and so long as it is reasonable in light of all the facts." 293 Or at 759.

In deciding whether the officers could *open* the briefcase they had seized without first getting a warrant, it is important to remember that *Caraher* involved the search of the defendant's purse, including the *opening* of a closed coin compartment of a wallet within the purse.