Aruged and submitted November 28, 1984, reversed on appeal, affirmed on cross-appeal March 6, reconsideration denied April 19, petition for review denied June 25, 1985 (299 Or 314)

## STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

## MICHAEL ANDREW MAHER,
*Respondent - Cross-Appellant.*

(CC83-976; CA A31394)

696 P2d 573

Stephen F. Pfeifer, Assistant Attorney General, Salem, argued the cause for appellant - cross-respondent. With him on the briefs were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Elizabeth A. Baldwin, Astoria, argued the cause and filed the brief for respondent - cross-appellant.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The state appeals a pre-trial order suppressing evidence of witness identifications from a photographic display and evidence seized under a search warrant issued on the basis of those identifications. Defendant cross-appeals the trial court's failure to suppress in-court identifications by persons to whom the display was shown and all evidence taken as a result of defendant's arrest. We reverse on appeal and affirm on cross-appeal.

The victim in this second-degree assault case was stabbed in the back about 11:30 p.m. on October 31, 1983. The assailant stabbed the victim while running past him. Four people witnessed the attack and described the assailant to the police. The victim also described him. The witnesses stated that they had seen the assailant earlier in the evening but that he had been wearing a mask; it was Halloween. One witness said that he had seen the assailant talking to a taxi driver that evening.

The next day an officer investigating the crime prepared a photographic display. He included a picture of a suspect, not defendant, and five other persons with appearances similar to that suspect. The victim and all the witnesses failed to identify anyone in the display. They also failed to identify four people shown to them in person.

A different officer then prepared a new display, including defendant's picture and those of five people similar to him in appearance. The victim and the witnesses all identified defendant, either tentatively or positively. On the basis of those identifications, the officers obtained a warrant to search defendant's residence for the knife used in the assault and for a jacket of the kind the assailant was wearing. They did not find those items during the search, but they did seize a scale and a plastic bag containing dried mushrooms. The entire investigation was finished by the evening of November 1, 1983.

The officer who prepared the first display and showed it to the witnesses did not preserve it, and it is now impossible to determine what pictures, besides that of the suspect, were included in it. The trial court found that neither defendant's picture nor that of anyone included in the second display was

in the first display. Nevertheless, the court held that the inability to reconstruct the first display made it presumptively suggestive and that the presumed suggestiveness of the first display affected the reliability of the second. We disagree.

When a defendant challenges the admissibility of an out of court identification, the first issue is whether the process was suggestive or needlessly departed from procedures prescribed to avoid suggestiveness. If so, the prosecution must then show that the identification was not the result of the suggestiveness. *State v. Classen,* 285 Or 221, 232, 590 P2d 1198 (1979). We have previously declined to consider whether the loss of a display makes an identification resulting from a subsequent display presumptively suggestive, because the issue was not adequately preserved. *State v. Smith,* 66 Or App 374, 675 P2d 1060, *rev den* 297 Or 339 (1984). We conclude that, under the facts here, loss of the first display does not taint the second.

For a display to be impermissibly suggestive it must somehow lead the witness to identify a person on some basis other than the witness' memory. A display could be impermissibly suggestive if, of all the persons shown, only one or two persons looked at all like the defendant. A previous display could cause a later display to be suggestive if the later display included people whom the witness had rejected in the first. If the display from which the witness chooses the criminal is lost, it might be appropriate for the court to find it presumptively suggestive. However, when the displays are entirely different, we fail to perceive how the loss of the first could *ipso facto* taint the second. Defendant has provided no basis for finding that the first display could have suggested to the witnesses that they select defendant from the second. There is no causal nexus between the loss of the first display and the witnesses' identification of defendant.[1] Therefore, the trial court erred in suppressing the evidence.

On cross-appeal, defendant attacks the trial court's refusal to exclude in-court identifications of him by those who saw the display. Because the displays were not impermissibly

---

[1] Defendant's other attacks on the identification procedures lack merit. There is nothing in the record which indicates that the officer directly or indirectly encouraged any witness to identify defendant as the assailant.

suggestive, the identifications of defendant by those who saw them were not tainted, and the court did not err in that respect.

■ Defendant also attacks the probable cause for his warrantless arrest and seeks to suppress evidence obtained as a result of the arrest. Although most witnesses only said that defendant's appearance was close to that of the assailant, one witness positively identified him from the photographs. There was probable cause for the arrest. Because there was probable cause, the arrest complied with ORS 133.310(1)(a); it was therefore not a warrantless seizure in violation of Article I, section 9, of the Oregon Constitution. *State v. Mace,* 67 Or App 753, 756-757, 681 P2d 140, *rev den* 297 Or 339 (1984).

■ Finally, defendant's statements during the search of his person incident to his arrest for assault created probable cause for the arresting officer to believe that a package the officer found inside defendant's jacket contained contraband. Whether or not defendant consented to the search of that package, the search was incident to defendant's assumed arrest for possession of the contraband.[2] *See State v. Caraher,* 293 Or 741, 653 P2d 942 (1982); *State v. Gordon,* 71 Or App 321, 692 P2d 618 (1984), *rev den* 298 Or 705 (1985); *State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984).[3]

Reversed on appeal; affirmed on cross-appeal.

---

[2] In response to a question from the arresting officer, defendant said, "That's my bong. Go ahead and dump it out if you want to." The officer immediately recognized the substances as contraband. After being advised of his *Miranda* rights, defendant said, "I can assure you those are psilocybin mushrooms." *See State v. Lowry,* 295 Or 337, 347, 667 P2d 996 (1983).

[3] Defendant did not object in the trial court to the warrantless *testing* of the substances found. *See State v. Lowry, supra* n 2. The parties do not explain what relevance, if any, defendant's possession of marijuana or psilocybin mushrooms has to this assault prosecution.