Argued and submitted December 14, 1983; resubmitted In Banc June 6, affirmed in part, otherwise reversed and remanded August 21, State's reconsideration and Westlund's reconsideration denied October 11, both petitions for review allowed November 16, 1985 (300 Or 332)

STATE OF OREGON,
*Respondent,*

*v.*

BERNARD JOHN WESTLUND,
*Appellant.*

(C83-01-30264; CA A28733)

705 P2d 208

Marc D. Blackman, Portland, argued the cause for appellant. With him on the brief was Ransom, Blackman & Simson, Portland

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

GILLETTE, J.

Newman, J., concurring.

Van Hoomissen, J., concurring in part; dissenting in part.

Rossman, J., dissenting in part; concurring in part.

## GILLETTE, J.

Defendant appeals his convictions for driving under the influence of intoxicants (DUII) and possession of cocaine, arguing, first, that the failure of the police to take him into civil custody for alcohol treatment before he drove made his DUII arrest unlawful and, second, that the warrantless testing of a powder in a vial taken from him at the time of his arrest was illegal. We agree only with the latter contention. We therefore affirm the DUII conviction and reverse and remand on the narcotics charge.

In the late afternoon of June 5, 1982, defendant was seen lying, apparently unconscious, under a motor vehicle near the corner of S.E. 7th and S.E. Mill in Portland. A person notified the Multnomah County Emergency Medical Center of defendant's condition, and the center dispatched an ambulance to investigate. An ambulance attendant found defendant conscious and determined that he was drunk. Fearing that defendant might try to drive, the attendant flagged down Portland Police Officer Taylor, who happened to be passing. Taylor had another errand, so she told Officer Minnis of the situation by radio. Minnis came to the location and parked two blocks away. He then watched defendant for five to seven minutes. During that time, defendant tried to change a flat tire and to take the old tire across the street and throw it into a dumpster. In the process, he staggered, could not control the tire and gave various other obvious indications of intoxication. Minnis concluded that defendant was intoxicated and Taylor, who happened by again, reached the same conclusion. Minnis was also aware that, if defendant drove, he would be a danger to himself or others. Neither officer intervened during that time.

After defendant replaced the tire, he got in his car, started it and began to drive away. Minnis immediately pulled him over. After he did poorly on field sobriety tests, Minnis arrested him for DUII. In the course of a search after the arrest, Minnis found a small brown vial in one of defendant's pockets. He seized it. The state crime laboratory determined that the vial contained cocaine. No one obtained a search warrant before opening the vial or before testing its contents.

██ Defendant argues that ORS 426.460(1)[1] required Minnis to take him into civil custody and transport him to a treatment facility before allowing him to drive his car. Minnis' failure to do so, he argues, escalated a civil problem into a criminal offense, contrary to the purpose of the statute and, he concludes, constituted police misconduct which precludes prosecuting him for DUII. The state concedes that Minnis "violated ORS 426.460(1) by not promptly taking defendant into 'protective civil custody' under the mandatory terms of the statute." We join with defendant and the state in disapproving that conduct. However, Minnis did not cause defendant to become intoxicated, did not suggest that he drive and did not furnish him an automobile. He simply passively observed. That was not entrapment or other illegality requiring dismissal. When defendant began driving, Minnis had a reasonable basis for stopping him and, after the stop, he had probable cause for the arrest. We see nothing in the statute which alters these facts.[2] We turn to the validity of the search of the vial.

██ Because defendant was properly arrested for DUII, the search of his person incident to that arrest and the discovery of the brown vial were valid. Minnis' testimony established that, on the basis of his training and experience, he reasonably believed that the vial contained a controlled substance. He therefore had probable cause to seize the vial. Defendant argues, however, that, under *State v. Lowry*, 295 Or 337, 667 P2d 996 (1983), the subsequent *testing* of the contents of the vial required a warrant. The state argues that defendant

---

[1] ORS 426.460(1) provides:

"Any person who is intoxicated or under the influence of controlled substances in a public place may be taken or sent home or to a treatment facility by the police. However, if the person is incapacitated, the health of the person appears to be in immediate danger, or the police have reasonable cause to believe the person is dangerous to self or to any other person, the person shall be taken by the police to an appropriate treatment facility. A person shall be deemed incapacitated when in the opinion of the police officer or director of the treatment facility the person is unable to make a rational decision as to acceptance of assistance."

[2] Defendant is one of the intended beneficiaries of ORS 426.460(1). By failing to follow the statutory mandate, Minnis may have exposed the city to liability to defendant or to anyone whom he might have injured. *See Nearing v. Weaver*, 295 Or 702, 670 P2d 137 (1983). The purpose of the statute, however, is to provide a person needed treatment, not an escape from the consequences of any crimes he might commit.

did not raise this point in the trial court but moved to suppress evidence of the cocaine only on the grounds that Minnis had no probable cause to seize the vial and that Minnis had no right to open a closed container. We hold that defendant adequately raised the issue and that *Lowry* is controlling.

Defendant filed his motion to suppress before the Supreme Court's decision in *Lowry.* The motion attacked "the officer's warrantless opening of the vial, as opposed to its mere seizure," as a violation of the closed container doctrine. It is not clear that there is a "closed container doctrine" under the Oregon Constitution. *See State v. Caraher*, 293 Or 741, 771, 653 P2d 942 (1982) (Lent, J., dissenting, urging the adoption of a closed container rule). However, the heart of *Lowry* is its distinction between seizures and searches and its insistence that a valid warrantless seizure does not, in itself, justify a subsequent warrantless search. Defendant in his motion to suppress made that distinction and thereby adequately brought the issue to the trial court's attention. We turn now to the impact of *Lowry* on this case.

We note first that the facts are essentially identical to those of *Lowry.* In each case, the defendant was arrested for DUII and a valid search incident to that arrest turned up a vial containing a suspicious substance that was not related to the original arrest. The arresting officers seized the vials but did not immediately open them. They were later opened without a warrant and the contents proved, after testing, to be cocaine. In this case, but not in *Lowry,* the arresting officer testified that, on the basis of his training and experience, he believed before the search of the vial that it contained a controlled substance. In the light of the Supreme Court majority's rationale in *Lowry,* this difference in the facts is without decisional significance.[3]

We have previously noted that *Lowry* is a troublesome case and that its analysis appears to be flawed in certain respects. For those reasons we refused to extend its apparent holding to somewhat different facts. *State v. Flores,*

---

[3] The concurring opinion in *Lowry* rests on the failure of the officer to establish that he had probable cause to believe that the vial contained contraband. 295 Or at 358 (Jones, J., concurring). Although that rationale is clearly a correct one, the Supreme Court majority declined to follow it as the basis for its decision. In determining the significance of *Lowry,* we must deal with what the majority stated in its opinion.

68 Or App 617, 627-34, 685 P2d 999 (1984). The analytical flaws in *Lowry* do not, however, leave it without meaning or precedential significance. The Supreme Court used it to emphasize again the primacy of the warrant requirement in Article I, section 9, of the Oregon Constitution and the narrowness of the exceptions to that requirement. The specific holding of the case was simply an example of how limited the exceptions are.

> "[T]he seizure of the bottle incident to a valid arrest and the subsequent testing of its contents are properly analyzed not as one but as two events. For 'probable cause' is not alone dispositive of those steps. The question is not simply whether probable cause to investigate, that is to say, to 'search,' the contents of the bottle did or did not exist, but whether there was any need to do so without a warrant.

> "The constitutional text itself ties the phrase 'probable cause' to warrants. It seems never to become superfluous to repeat that the requirement of a judicial warrant for a search or seizure is the rule and that authority to act on an officer's own assessment of probable cause without a warrant is justified only by one or another exception. [Citations omitted.] The time to make the judicial determination whether there is probable cause for a search or a seizure, if time permits, is before the individual's privacy is invaded. A later adjudication upon a motion to suppress evidence, although necessary, does not undo the invasion, does not help persons who are cleared and never prosecuted, and colors the perception of 'probable cause' by what the search in fact revealed." 295 Or at 346.

Simply put, *Lowry* requires that each step of a warrantless search or seizure be justified by an exception to the warrant requirement; it is irrelevant whether a previous or subsequent step is within an exception. The precise holding is that, once a suspect object is in an officer's control, any necessity for proceeding without a warrant has ended and the officer can do no more than "safeguard it and * * * obtain a speedy judicial decision" on whether there is probable cause for a further search. "[U]nless the substance is volatile the practical need to proceed without a warrant normally extends no further." 295 Or at 347. The warrantless *seizure* does not justify a later warrantless *search*.

Although the Supreme Court's analysis in *Lowry* is

faulty,[4] its insistence on the warrant requirement and its specific holding are consistent with Oregon search and seizure law, although they may not be fully consistent with previous practice. Because the facts of this case are precisely the facts of *Lowry,* we are called upon to enunciate, if we can, a correct Oregon constitutional basis for the *Lowry* result.[5] Article I, section 9, prohibits the enactment of laws which violate the right of the people to be "secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *." An unjustified invasion of a person's property is a trespass and, if the invasion is of a constitutionally protected place or thing and is by a public officer, it is a violation of the rights which the constitution protects. *See State v. Lee,* 120 Or 643, 253 P 533 (1927); *Smith v. McDuffie,* 72 Or 276, 142 P 558, 143 P 929 (1914); *State v. Ohling,* 70 Or App 249, 688 P2d 1384, *rev den* 298 Or 334 (1984). The vials in this case and in *Lowry* are constitutionally protected "effects." The warrantless seizures of the vials were trespassory unless some exception to the warrant requirement justified them. In *Lowry*

---

[4] There are two major flaws in the Supreme Court's analysis in *State v. Lowry, supra.* They are (1) the failure to recognize the importance of probable cause as the necessary justification for the seizure of the vial and (2) the failure to apply the well-established progressive probable cause analysis to the defendant's arrest. *See State v. Flores, supra,* 68 Or App at 632. As a result of those lapses, the Supreme Court's analysis is of questionable validity. However, as we describe below, the *Lowry* holding is sustainable on a different analysis, and the Supreme Court's lapses in logic do not alter the binding effect of its holding.

Neither analytic flaw is fatal to the correctness of the Supreme Court's result. First, even if there were probable cause for the seizure, there still would not necessarily be a justification for the subsequent warrantless search of the object seized. Secondly, the failure to recognize the progressive probable cause analysis is important only in distinguishing *Lowry* from *State v. Caraher, supra,* in which the Supreme Court upheld the warrantless seizure of evidence from the defendant's purse because the seizure was incident to her arrest for possession of a controlled substance. The court in *Lowry* distinguished the cases by noting that the closed container search in *Caraher* was related to the crime for which the defendant was first arrested, while that in *Lowry* was not. Yet, if the officer in *Lowry* had probable cause to believe that the vial contained cocaine, that search was also incident to a presumed arrest for possession if it was reasonable in scope, time and intensity. Thus, the Supreme Court's distinction will not work. The real distinction between those cases is that the only part of the search which the defendant challenged in *Caraher* took place immediately after her arrest and was proper as incident to it; she did not raise the seizure/search issue. The Supreme Court reached the latter issue in *Lowry.*

[5] Of course, even if the Supreme court's decision in *State v. Lowry, supra,* were both an innovation in Oregon law and completely indefensible analytically, we would be bound to follow it on facts identical to those in *Lowry* because the decision is a binding precedent of a superior court. *Jensen v. Osburn,* 74 Or App 7, 701 P2d 790 (1985).

and the present case, the search-incident-to-arrest exception supported the searches which led to the discovery of the vials. In neither case was seizure of the vial justified as incident to the arrest for the crime for which the defendant was originally arrested. However, if the officers had probable cause to believe that the vials or their contents were subject to seizure under ORS 133.535,[6] the officers could seize them, either because there were exigent circumstances or as incident to a presumed arrest on a possession charge.

 Seizure of the vials was a limited intrusion into the defendants' interests in the effects; it left a significant part of those interests intact. However strong the officers' suspicions, they did not *know* what was in the vials; without that knowledge the vials and their contents would be useless as evidence. To determine whether the contents were contraband and, thus, to confirm their suspicions, the officers, or others to whom the officers gave the vials, had to open the vials and test their contents, with the destruction of part of the contents which testing requires. To do so changed the nature of the trespass from a temporary deprivation of the effect to an intrusion into it and the permanent loss of part of it. This additional intrusion was different in character and greater in intensity than was the original seizure. The justification for the original warrantless search and seizure could not justify the additional intrusion; that required either a warrant or an independent exception to the warrant requirement.

 There is no exception to the warrant requirement which will support the additional intrusion that the testing involved. Because the vials were under the officers' control, there were no exigent circumstances. *See State v. Kirsch,* 69 Or App 418, 421-22, 686 P2d 446, *rev den* 298 Or 151 (1984). The testing was not reasonable in time in relation to a

---

[6] ORS 133.535 provides in part:

"The following are subject to search and seizure under ORS 133.525 to 133.703:

"(1) Evidence of or information concerning the commission of a criminal offense;

"(2) Contraband, the fruits of crime, or things otherwise criminally possessed;

"(3) Property that has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense * * *."

presumed arrest for possession, and a logical stopping point[7] had already been reached. The search was therefore not properly incident to the defendants' presumed arrests for possession of a controlled substance. *See State v. Caraher, supra; State v. Chinn,* 231 Or 259, 373 P2d 392 (1962); *State v. Flores, supra,* 68 Or App at 634.[8] The testing of the powder required a warrant.

 What is important in determining whether additional investigation of a seized item requires a warrant is whether the investigation involves either an intrusion into a previously untouched constitutionally protected area or damage to the property. *See State v. Riley,* 240 Or 521, 523, 402 P2d 741 (1965). Opening the vial and testing its contents meet both tests.[9] Because the vial was originally seized without a warrant and because there is no applicable exception to the warrant

---

[7] In *State v. Flores, supra,* we noted that the Supreme Court's insistence in *State v. Lowry, supra,* on the warrant requirement as a limitation on the power to search incident to an arrest meant that "when a search reaches a logical stopping point the police must seek a warrant before proceeding further." 68 Or App at 634. Since *Flores,* we have applied that requirement to determine at what point officers must stop searching automobiles which they have not seized. *State v. Martin,* 71 Or App 1, 6, 691 P2d 154 (1984); *State v. Kirsch, supra,* 69 Or App at 423. The same analysis applies when the question is whether officers may search or increase the intensity of the search of an item which they have seized incident to an arrest. If the search has reached a logical stopping point, the officers need a warrant or a new exception to the warrant requirement.

[8] We need not determine whether an immediate field test would have been proper as incident to the arrest.

[9] The United States Supreme Court recently held that a warrantless field test of suspected cocaine was not a search under the Fourth Amendment. *United States v. Jacobsen,* 466 US 109, 104 S Ct 1652, 80 L Ed 2d 85 (1984). It relied on the analysis of *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967), to determine that, under the facts of the particular case, the officers had not invaded the defendant's reasonable expectation of privacy in the package from which the suspected cocaine was taken. The facts of *Jacobsen* are complicated by a previous private search and are not directly comparable to those in this case. The most significant distinction between *Jacobsen* and this case, if one is needed, is that Oregon has not yet found it necessary to adopt the *Katz* expectation of privacy analysis. We have no doubt that, when faced with the phenomenon of modern-day devices that enhance the senses (such as the evesdropping device in *Katz*), Article I, section 9, will prove equal to the task of defining and protecting individual freedom. However, the extent to which *Katz* states a principle of Oregon law is presently unsettled and, whatever the extent, it will add to, not replace, the trespass analysis. *See State v. Louis,* 296 Or 57, 60, 672 P2d 708 (1983) (application of Article I, section 9, to a person's house does not depend on showing an expectation of privacy; the purpose of *Katz* is to extend protection beyond what the Fourth Amendment literally protects, not to qualify unquestioned constitutional protections); *State v. Elkins,* 245 Or 279, 288-89, 422 P2d 450 (1966) (Article I, section 9, protects property rights as well as privacy interests); *State v. Ohling, supra,* 70 Or App at 252 n 4.

requirement, that additional trespass required a warrant. Article I, section 9, requires judicial involvement in the police decision to search at the earliest practicable moment. We believe that this is the point which the Supreme Court sought to make in *Lowry.* Although its reasoning may not have been perfect, the result is consistent with previous Oregon law. The police actions after the seizure were in violation of Article I, section 9. The court erred in refusing to suppress the evidence.[10]

DUII conviction affirmed; otherwise reversed and remanded.

**NEWMAN, J.,** concurring.

I concur in the result. The police had probable cause to seize the vial and, on the basis of its discovery, they had probable cause to arrest defendant for possession of a controlled substance. As the majority recognizes, 75 Or App at 47, however, the subsequent opening and testing of the vial are searches that require independent justification for proceeding without a warrant. *See State v. Lowry,* 295 Or 337, 667 P2d 996 (1983); *State v. Herbert,* 75 Or App 106, 705 P2d 220 (1985)

The issue is whether there is an exception to the warrant requirement to justify the warrantless opening of the vial and the testing of its contents. There is not. As the majority states:

> "Because the vials were under the officers' control, there were no exigent circumstances. *See State v. Kirsch,* 69 Or App 418, 421-22, 686 P2d 446, *rev den* 298 Or 151 (1984). The testing was not reasonable in time in relation to a presumed arrest for possession, and a logical stopping point had already been reached. The search was therefore not properly incident to the defendants' presumed arrests for possession of a controlled substance. * * * The testing of the powder required a warrant." 75 Or App at 50. (Footnotes omitted.)

---

[10] We have now followed and explained—as best we can—*State v. Lowry.*

The author of this opinion, joined by the Chief Judge and Judges Richardson and Young, wish to note that, were we writing on a clean slate, we would prefer that the Oregon Constitution were construed as the dissent wishes to construe it. If we have erred in our effort to give form and substance to *State v. Lowry,* the Supreme court needs to see that there is a crying need for it to say so.

With respect to Article I, section 9, the majority need not have said more.

**VAN HOOMISSEN, J.,** concurring in part; dissenting in part.

I agree that defendant's conviction for driving under the influence of intoxicants should be affirmed.

I respectfully dissent from the majority's conclusion that the warrantless testing of the powder in the vial taken from defendant at the time of his arrest was illegal. On these facts, I would hold, in conformity with federal authority, *see United States v. Jacobsen,* 466 US 109, 104 S Ct 1652, 80 L Ed 2d 85 (1984), that no warrant was required to test the powder.

At trial, defendant claimed only that the "seizure" of the vial and its "opening" were unlawful because of lack of probable cause and breach of the "closed container doctrine."[1] At no time did he specifically raise the "testing" issue.[2] He should not now be permitted to prevail on that issue in this court. *State v. Evans,* 290 Or 707, 625 P2d 1300 (1981); *State v. Hickmann,* 273 Or 358, 360, 540 P2d 1406 (1975); *State v. Abel,* 241 Or 465, 467, 406 P2d 902 (1965).

In the final analysis, this case presents us with the question of what *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983) means. We intimated in *State v. Flores,* 68 Or App 617, 630-636, 685 P2d 999, *rev den* 298 Or 151 (1984), that *Lowry* should not be taken at face value. I hold firm to the conviction that the analysis in *Flores* was, and still is, clear, cogent and correct.

On its facts, *Lowry* was virtually on all fours with *State v. Elkins,* 245 Or 279, 422 P2d 250 (1966). It could, and almost certainly should, have been decided on that basis alone. However, the majority opinion in *Lowry,* in an apparent

---

[1]The majority correctly notes that it is not at all clear that there is a "closed container doctrine" under the Oregon Constitution.

[2]It would be enormously. helpful if the Supreme Court would tell us whether *opening* a closed container and *testing* its contents is one or two discrete constitutional events. *See State v. Lowry,* 295 Or 337, 346, 667 P2d 996 (1983); *see also State v. Bennett,* 72 Or App 733, 737, 697 P2d 213, *rev allowed* 299 Or 443 (1985); *State v. Maher,* 72 Or App 543, 547 n 3, 696 P2d 573, *rev den* 299 Or 314 (1985); *State v. Gordon,* 71 Or App 321, 327 n 7 and 8, 692 P2d 618, *rev den* 298 Or 705 (1984); *State v. Flores,* 68 Or App 617, 638 n 12, 685 P2d 999, *rev den* 298 Or 151 (1984).

attempt to expound on the meaning of Article I, section 9, of the Oregon Constitution, and the court's earlier opinion in *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982), wandered far afield from *Elkins* to suggest, *inter alia,* the principle on which the majority now relies, *i.e.,* that testing the contents of a lawfully seized container of a suspected controlled substance requires a warrant. 295 Or 345-348. However, the precise *holding* in *Lowry* does not require us to reverse this conviction.[3]

I do not agree with the *dictum* in *Lowry* that testing is a form of search.[4] The testing of lawfully obtained evidence has historically been a routine investigatory practice, not an event of discrete constitutional moment. Heretofore, attention has appropriately focused on how the police *obtained* the evidence. Was the search that brought it to light valid? Was it permissibly seized? I find no constitutional justification for treating events occurring *after* a valid seizure of contraband as a search having constitutional consequences. Under the facts here, I would hold that the testing did not constitute a search for purposes of Article I, section 9.

The proper analysis for the result in *State v. Lowry, supra,* is contained in Judge Jones' concurring opinion. In *Lowry,* the officer did not have probable cause to seize the pill bottle or to believe that the seized vial contained a controlled substance. In this case, however, Officer Minnis had probable

---

[3]The Supreme Court allowed review in *Lowry* to consider whether this court had misapplied the law as stated in *State v. Elkins,* 245 Or 279, 422 P2d 250 (1966), and in the light of *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982). 295 Or at 339. The holding of *Lowry,* to the extent that a holding can be found, appears to be that the *seizure* of the pill bottle was unlawful, because it "was seized in the course of arresting defendant for a crime with which the bottle had nothing to do" and because "defendant was not arrested for or suspected of having any controlled substance. Nor did the indisputable nature of the substance become evident to the officers' observation simply in the course of the routine of the arrest * * *." 295 Or at 347. Thus, because the *seizure* in *Lowry* was unlawful, consideration of the validity of any subsequent testing was unnecessary to the holding in the case and, therefore, the language in *Lowry* concerning testing is *dictum. See State v. Flores, supra,* 68 Or App at 632, and n 4, infra.

[4]I have considerable difficulty in perceiving confirmatory scientific testing of contraband as a "search." *See United States v. Jacobsen,* 466 US 109, 104 S Ct 1652, 80 L Ed 2d 85, 100-102 (1984). A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "search" normally has an object: it is aimed at finding something new or different. Testing of the kind involved here would not find anything new; it only would confirm what the police already had probable cause to believe, *i.e.,* that the vial contained contraband.

cause to seize the vial incident to defendant's arrest. He also had probable cause to believe that the seized vial contained a controlled substance. He testified that, on the basis of his training and experience, he was 90 percent certain that the vial contained contraband.[5] On those facts, I would hold that no separate warrant was required to test the vial's contents. *See State v. Lowry,* 295 Or 337, 366, 667 P2d 996 (1983)(Jones, J., specially concurring); *State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984);[6] *see also State v. Gelvin,* 318 NW 2d 302, 307-08 (N.D. 1982).

No Oregon authority has ever before held that the

---

[5]The majority opinion states that, in the light of the Supreme Court's rationale in *State v. Lowry,* the fact that Minnis testified that he was 90 percent certain that the vial contained contraband is without decisional significance. If so, why did the majority in *Lowry* find it necessary to emphasize *twice* that there was no *independent* justification for the seizure other than an arrest for DUII?

"The state does not contend in this case that the arresting officer seized the brown pill container on any suspicion that its contents related to the apparent intoxication that led to defendant's arrest." 295 Or at 345.

"[In *Lowry*] the pill bottle was seized in the course of arresting defendant for a crime with which the bottle had nothing to do. This is the decisive distinction between this case and *Caraher,* which sustained the warrantless seizure of evidence from Caraher's purse because 'the arrest was for possession of a controlled substance [and] it was reasonable to believe that defendant would carry contraband in her purse.' 293 Or at 759. The present defendant was not arrested for or suspected of having any controlled substance. Nor did the indisputable nature of the substance become evident to the officers' observation simply in the course of the routine of the arrest, as may happen when unlawful weapons, burglar tools, specific property already known to be stolen, marijuana, or other contraband is discovered in plain view in a traffic stop or a frisk." 295 Or at 347.

Further, the whole point of Judge Jones' concurrence in *Lowry* was based on this very distinction!

[6]In *State v. Flores, supra,* we stated:

"We shall not read *Lowry* as making an abstract opportunity to obtain a warrant dispositive under the present circumstances, for two reasons: First, we think it clear that, if that is what was intended, the majority could have said it. It did not. Second, we think that, had *Lowry* been meant to stand for such a proposition—that the seizure of contraband incident to lawful arrest nonetheless separately requires a warrant before that contraband can be tested—its incredible departure from traditional practice would have been made with greater candor and would have provoked a firestorm of dissent, not a concurrence. Third, such an approach is both impractical and of little protection to the person being searched. We recognize that the opportunity to seek a warrant now has greater significance in a search incident to arrest than it did previously and that, when a search reaches a logical stopping point the police must seek a warrant before proceeding further. However, requiring officers to stop midway in a search like the present one, leave everyone in limbo, and seek a warrant would tend to benefit only the stationers who sell blank search warrant forms." (Footnote omitted.) 68 Or App at 634.

police need a warrant to *test* lawfully seized contraband. Is it not just a little surprising that it has taken the Supreme Court more than one hundred years to "discover" a state constitutional mandate for a warrant to test lawfully seized contraband? Does this new requirement mean that an *immediate field test* incident to a drug related arrest would be invalid? Perhaps this approach is a "novel social experiment" by the Supreme Court. *See New State Ice Co. v. Liebmann,* 285 US 262, 311, 52 S Ct 371, 386 76 L Ed 747 (1932) (Brandeis, J., dissenting); *Truax v. Corrigan,* 257 US 312, 344, 42 S Ct 124, 134 66 L Ed 254 (1921) (Holmes, J., dissenting). If so, the Supreme Court has utterly failed to articulate in *Lowry* any circumstances unique to Oregon that would justify this departure from tradition and authority. It simply fails to disclose why Oregon should have a higher standard of protection in a case such as this than is provided by the Fourth Amendment. *See* n 7, *infra.*

Further, there is no *principled* reason why the result should be different under the Oregon Constitution than under the Fourth Amendment. Article I, section 9, provides in relevant part:

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

Amendment IV, United States Constitution, provides in relevant part:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *."

The failure of the majority opinion in *State v. Lowry, supra,* to articulate any intent on the part of the framers of the Oregon Constitution, or any circumstances unique to Oregon, that would justify a result different from that reached by the United States Supreme Court *under virtually identical language* is more than a little troublesome.[7]

---

[7]Judge Linde has written:

"[T]o make an independent argument under the state clause takes homework—in texts, in history, in alternative approaches to analysis. It is not enough to ask the state court to reject a Supreme Court opinion on the comparable federal clause merely because one prefers the opposite result." Linde, *First Things First:*

Justice Pollock of the Supreme Court of New Jersey has explained:

"As the role of state constitutions expands, it will become increasingly important for state courts to develop a rationale to explain when they will rely on their own constitutions. State courts should not look to their constitutions only when they wish to reach a result different from the United States Supreme Court. That practice runs the risk of criticism as being more pragmatic than principled." Pollock, *State Constitutions As Separate Sources Of Fundamental Rights,* 35 Rutgers Law Review 707, 717 (1983).

*See also State v. Chrisman,* 100 Wash 2d 814, 822, 676 P2d 419, 425 (1984) (Dimmick, J., dissenting); *People v. Oates,* ___ Colo ___, ___, 698 P2d 811, 822 (1985) (Erickson, C.J., dissenting); *People v. Disbrow,* 16 Cal 3d 101, 199, 545 P2d 272, 284, 127 Cal Rptr 360, 372 (1976) (Richardson, J., dissenting); *McGraw, Developments in State Constitutional Law: The Williamsburg Conference* (1985); *Note, The New Federalism: Toward A Principled Interpretation Of The State Constitution,* 29 Stan L Rev 297, 316-19 (1977); Howard, *State Courts And Constitutional Rights In The Day Of The Burger Court,* 62 Va L Rev 873, 934-944 (1976).

The evidence suppressed here is clearly admissible under federal precedent.[8] In *United States v. Jacobsen,* 466 US 109, 104 S Ct 1652, 1661-63, 80 L Ed 2d 85 (1984), the Court addressed the question of whether a chemical field test of a substance suspected to be cocaine constituted an unreasonable search and seizure under the Fourth Amendment. The court stated:

---

*Rediscovering The States' Bill Of Rights,* 9 U Balt L Rev 379, 392 (1980).

*See State v. Nettles,* 287 Or 131, 135 n 2, 597 P2d 1243 (1979); *State v. Florance,* 270 Or 169, 183, 527 P2d 1202 (1974); *City of Portland v. Thornton,* 174 Or 508, 512, 149 P2d 972 (1944). After several hours of research, I have been unable to find a single case from another state appellate court that lends support to the majority result here. Of course, *Lowry* cites none.

[8]*See United States v. Johns,* 469 US ___, 105 S Ct 881, 83 L Ed 2d 890 (1985); *Nix v. Williams* ___ US ___, 104 S Ct 2501, 81 L Ed 2d 377 (1984); *United States v. Jacobsen, supra,* 466 US 109 at ___, (1984); *United States v. Ross,* 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982); *New York v. Belton,* 453 US 454, 101 S Ct 2860, 69 L Ed 2d 768 (1981); *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973); *Gustafson v. Florida,* 414 US 260, 94 S Ct 488, 38 L Ed 2d 456 (1973); *see also Hilley v. State,* ___ Ala Cr App ___, ___ So 2d ___, *rev den* (1985); *State v. Gans,* 454 So2d 655, 657 (Fla App 5 Dist 1984).

"A chemical test that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy. This conclusion is not dependent on the result of any particular test. It is probably safe to assume that virtually all of the tests conducted under circumstances comparable to those disclosed by this record would result in a positive finding; in such cases, no legitimate interest has been compromised. But even if the results are negative—merely disclosing that the substance is something other than cocaine—such a result reveals nothing of special interest. Congress has decided—and there is no question about its power to do so—to treat the interest in 'privately' possessing cocaine as illegitimate; thus governmental conduct that can reveal whether a substance is cocaine, and no other arguably 'private' fact, compromises no legitimate privacy interest."

That discussion is confined to possession of contraband. 466 US at ___ n 23. It does not suggest that *every* seizure of a small amount of any material is necessarily reasonable. 466 US at ___ n 28; *see United States v. Place,* 462 US 696, 103 S Ct 2637, 77 L Ed 2d 110 (1983); *Illinois v. Andreas,* 463 US 765, 103 S Ct 3319, 77 L Ed 2d 1003 (1983).

Suppression of the evidence is not appropriate here. This incident occurred in 1982. The constitutional implications of *testing* lawfully seized contraband had never been addressed by an Oregon appellate court when Minnis sent the contraband to the crime lab. *Lowry* was decided in 1983. For almost two years, this court has been attempting to understand *Lowry.* Even now, we are sharply divided on its meaning. At the time of defendant's arrest, Minnis had no reason to believe that what he did would later be held to be unlawful. Thus, the federal *rationale* for the exclusionary rule, *i.e.,* deterrence, *United States v. Calandra,* 414 US 338, 94 S Ct 613, 38 L Ed 2d 561 (1974), is not served by suppression in this case. Insofar as any other state *rationale* for the exclusionary rule is concerned, *see State v. Davis,* 295 Or 227, 666 P2d 802 (1983); *State v. Neidenbach,* 73 Or App 476, 698 P2d 1040, *rev allowed* 299 Or 522 (1985), it cannot be argued seriously that defendant had any legitimate expectation of privacy in lawfully seized contraband. And as a practical matter, what is to prevent the state from retrying this case without the suppressed test results? Is there any doubt but that we would sustain a conviction based on the testimony of officer Minnis

that he was 90 percent certain that the vial's contents were contraband? I think not.[9]

More than forty years ago, Justice Cardozo warned in *Snyder v. Massachusetts,* 291 US 97, 122, 54 S Ct 330, 338, 78 L Ed 674 (1934):

> "But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true."

I do not in any way question the majority's good faith in attempting to perform our task as an intermediate appellate court. Nevertheless, in its attempt, the majority's result strains the concept of fairness. It unreasonably denies justice to the citizens of Oregon. It does not result in a common sense balancing of the legitimate rights of defendant not to be wrongly convicted and the legitimate interest of the people in protection from crime.[10]

Warden, J. and Rossman, J. concur in this concurrence and dissent.

**ROSSMAN, J.,** dissenting in part; concurring in part.

I write separately out of a deep sense of frustration. Despite our best efforts, this court seems to be losing its ongoing struggle to find the true meaning of *State v. Lowry.* Although I would never presume to have insights into *Lowry* which my colleagues lack, I cannot believe that the majority's interpretation is the correct one. Therefore, I must respectfully dissent.

This is not the first time that reasonable minds on this court have differed as to the true import of *Lowry. See, e.g., State v. Herbert,* 75 Or App 106, 705P2d 220 (1985); *State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984); *see also State v. Robinson,* 64 Or App 770, 773 n 1, 669

---

[9]The reversal in this case may ultimately avail defendant nothing. If the police still have the vial (and it would be unusual, to say the least, if they had returned it to defendant), they may even now be able to get a warrant and conduct a new test, thereby producing evidence (test results) that would be admissible at any retrial. *See State v. Herbert,* 75 Or App 106, 705 P2d 220 (1985) (Gillette, J., concurring).

[10]*See* Harris, *The Return To Common Sense: A Response To "The Incredible Shrinking Fourth Amendment,"* 22 Am Crim L Rev 25 (1984).

P2d 1175 (1983). Some of our members have adopted varying positions. *Compare State v. Flores, supra,* with the majority opinion here. However, others have steadfastly resisted a reading of *Lowry* that would require warrants to open and test the contents of a lawfully seized transparent vial.

It is not my purpose to be an obstructionist. I fully recognize this court's responsibility to follow the mandate of the Supreme Court. The problem is that it is simply not possible to tell what that mandate is. The present majority goes to great lengths to find an answer. In the process I fear that we are getting lost in an academic exercise and loosing sight of the real world ramifications.

The majority concludes that, under *Lowry,* each step of a warrantless search or seizure must be independently justified by an exception to the warrant requirement. The majority applies its interpretation to this case and holds that, even though the vial was lawfully seized incident to arrest and even though the officer was sure it contained cocaine, the subsequent opening of the vial and the testing of its contents constituted additional searches, each of which required warrants or independent exceptions.

I do not understand how *Lowry,* or any well-reasoned opinion, could stand for that proposition. It defies logic and common sense. In the first place, the testing of lawfully seized evidence is not a search. A "search" has traditionally involved an element of seeking or looking, which, when successful, results in the discovery of contraband or other evidence. *See Black's Law Dictionary* (5th ed 1979); *Webster's New Collegiate Dictionary* (1974). The challenged actions in this case involved no seeking or discovery. The officers were certain or reasonably believed that the vial contained cocaine and were endeavoring only to confirm their beliefs. They were not on a mission to discover evidence, but only to identify it conclusively. Under such circumstances, there is no conceivable need for a warrant.

Secondly, regardless of under which constitution we analyze a "search," the bottom line is whether the officer's behavior was "reasonable."[1] In cases such as this, when a

---

[1] Reasonableness is the standard under both the United States and Oregon Constitutions. The Fourth Amendment to the United States Constitution provides, in pertinent part:

transparent vial or container is lawfully in police custody and it is clear to the officers that it contains a certain narcotic drug, it makes no sense whatsoever to require officers—in the name of reasonableness—to obtain warrants before testing the contents. It is not as though there is some off-hand chance that the warrant would be denied or that some privacy or property interest of the defendant would be protected. In such situtions, if an application were made, a warrant would be issued perfunctorily, thus reducing the magistrate's role to a rubber stamp.

Why, then, require law enforcement officers to go through some ceremonial rain dance—merely postponing the inevitable? As part of their public service, law enforcement officials and trial judges are committed to many tasks on behalf of a wide range of diverse interests. Their time and resources are already stretched to the limit. Forcing them to engage in the process propounded by the majority is a colossal waste, which benefits no one except, as Gillette, J., has said, "the stationers who sell blank search warrant forms." *State v. Flores, supra,* 68 Or App at 634. In effect, the majority opinion does nothing more than elevate *forms* over (controlled) *substances.*

Perhaps the time will come when the Supreme Court tells us that the majority's reading of *Lowry* is correct. In that event, I would, of course, accept it, albeit with misgivings. I just cannot help thinking how much more reasonable it would have been had *Lowry* been written in a straightforward manner, simply and clearly spelling out its holding. The criminal justice system can function effectively only if its laws can be plainly understood so that they can be applied in a consistent and predictable manner. I am reminded of a passage from *Jungwirth v. Jungwirth,* 115 Or 668, 672, 240 P 222 (1925):

---

"The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures shall not be violated." (Emphasis supplied.)

Similarly, Article I, section 9, of the Oregon Constitution provides, in pertinent part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* search, or seizure; * * *." (Emphasis supplied.)

"Praised be he who can state a [case] in a clear, simple and succinct manner, and then stop."

I concur in the affirmance of the DUII conviction, but I respectfully dissent from the rest of the majority opinion.

Warden and Van Hoomissen, JJ., join in this opinion.