# STATE OF OREGON,
*Appellant,*

*v.*

# WILLIAM CALVIN TANNER,
*Respondent.*

## (84-0973; CA A36777)

728 P2d 47

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Raymond F. Thomas, Portland, argued the cause for respondent. With him on the brief was Royce, Swanson & Thomas, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This case presents a question of first impression under Article I, section 9, of the Oregon Constitution: Does a thief have "standing," that is, a constitutionally protected interest, in stolen property kept in the premises of a third party so that the thief may object to a search of those premises? The answer is, No!

Defendant was charged with theft from his employer, Tower Records. The state appeals a trial court's pretrial order suppressing evidence. ORS 138.060(3). The issue is whether the use of the evidence at trial would violate defendant's rights under Article I, section 9, of the Oregon Constitution.[1] The trial court concluded that it would. We disagree and, therefore, reverse.

On May 2, 1984, while lawfully in the home of Charles and Lori Best, the police saw marijuana in plain view. Later, they obtained a warrant to search the home for drug-related evidence. While executing that warrant, the police saw video tapes and electronic equipment that they believed were stolen property. On May 5, the police obtained another warrant to search the Bests' home, this time for stolen property. While executing that warrant, they seized the video tapes and electronic equipment that they had seen on May 2. Tower Records' video department manager identified the stolen property. The manager and the assistant manager, spoke with defendant on May 15. The assistant manager summarized defendant's statement to them:

> "He basically just said that he had taken all of this stuff [from Tower Records] to use as collateral on a cash loan from Charley Best because he needed the cash because his wife's disability hadn't come through, and that once the loan was paid off, the disability came through and the loan was paid off, that he would return the merchandise."

Defendant was not in the Bests' home when it was searched or when the stolen property was seized by the police.

---

[1] Article I, section 9, of the Oregon Constitution provides, in part:

"No law shall violate the right of the people to be secure in *their* persons, houses, papers, and effects, against unreasonable search, or seizure * * *." (Emphasis supplied.)

Defendant's motion to suppress was based solely on Article I, section 9. He concedes that he lacked standing[2] to challenge the disputed evidence under federal authorities. *See Rawlings v. Kentucky,* 448 US 98, 100 S Ct 2556, 65 L Ed 2d 633 (1980); *United States v. Payner,* 447 US 727, 100 S Ct 2439, 65 L Ed 2d 468 (1980); *Rakas v. Illinois,* 439 US 128, 99 S Ct 421, 58 L Ed 2d 387 (1978); *Jones v. United States,* 362 US 257, 80 S Ct 725, 4 L Ed 2d 697 (1960).

The state filed a memorandum opposing defendant's motion on its merits and, additionally, it challenged his "standing" to complain about any illegality at the Bests' home. The state does not dispute the trial court's ruling that the May 2 search of the Bests' home was illegal and that it tainted the May 5 search warrant. It argues only that defendant had no "standing" under Article I, section 9, to contest any police action in the Bests' home.

The trial court found:

"1. That defendant gave Charles and Lori Best *stolen property* from Tower Records as collateral for a loan;

"2. That the aforementioned property was seized pursuant to a search warrant executed on May 5, 1984 at the Best home;

"3. That the May 5 warrant was based upon information obtained during the execution of the search warrant at the Best home on May 2, 1984;

"4. That the May 2, 1984 warrant is invalid." (Emphasis supplied.)

The court concluded, in part:

"[1] That the defendant Tanner has an expectation of privacy in the Best residence by virtue of the fact that the home was the repository of defendant's collateral;

"2. That defendant has an expectation of privacy in the property seized because, *although stolen,* he had pledged it as collateral;

"3. That as a result, defendant Tanner has standing to object to the search of the Best residence;

---

[2] The state uses the word "standing" as shorthand for a constitutionally protected interest, and so will we in this case.

"4.  That the property seized from the Best home on May 5, 1984 is ordered suppressed." (Emphasis supplied.)

The trial court's finding that the property in question was, in fact, stolen is supported by evidence in the record, and we are bound by it. *Ball v. Gladden,* 250 Or 485, 487-88, 443 P2d 621 (1968); *State v. Johnson/Imel,* 16 Or App 560, 571, 519 P2d 1053, *rev den* (1974). Also, defendant concedes that he had no interest in the Bests' home, other than his purported interest in the stolen property that was stored there. Defendant's claim for suppression of the evidence fails on the merits if *his* rights were not violated in the state's acquisition of the evidence. *See State v. McMurphy,* 291 Or 782, 785-86, 635 P2d 372 (1981).

■      The property was stolen. He had no rights in it. He was a thief. *See Restatement (Second) Torts,* § 895, *illustration 6; cf State v. Normile,* 74 Or App 545, 702 P2d 1160, *rev den* 300 Or 162 (1985) (defendant had rights in a rental car held after the rental term expired, but his rights were inferior to those of the police acting on behalf of the true owner).

We reject defendant's *rationale.* No public purpose could conceivably be served by extending the protection of Article I, section 9, to a thief in the enjoyment of stolen property. Defendant cites no authority for the proposition that a thief has a protected interest in stolen property, and our research has found none. He concedes that federal authority is directly to the contrary. The few state cases cited by the state generally support the state's position that a thief has no protected interest in stolen property.[3] The trial court erred in suppressing the evidence.[4]

---

[3] *See State v. Emery,* 41 Or App 35, 39, 597 P2d 375 (1979); *People v. Tellez,* 161 Cal App 3rd 1067, 208 Cal Rptr 105 (1984); *Sussman v. Commonwealth,* 610 SW2d 608 (Ky 1980); *Graham v. State,* 47 Mo App 287, 421 A2d 1385 (1980); *Clarke v. State,* 218 Tenn 259, 402 SW2d 863, *cert den* 385 US 942 (1966); *Wilder v. State,* 583 SW2d 349 (Tex Crim App 1979), *vacated on other grounds* 453 US 902, *on remand* 623 SW2d 650 (1981); *see also Mahar v. State,* 137 Ga 116, 223 SE2d 204 (1975); *State v. Hamm,* 348 A2d 268 (Me 1975); *State v. Boutot,* 325 A2d 34 (Me 1974); *Duncan v. State,* 27 Md App 302, 340 A2d 722 (1975); *Palmer v. State,* 14 Md App 159, 286 A2d 572 (1972); *State v. Perkins,* 543 SW2d 805 (Mo 1976); *State v. May,* 613 SW2d 877 (Mo App 1981); *State v. McFarland,* 195 Neb 394, 238 NW2d 237 (1976).

[4] *If,* as appellant argues, the expectation of privacy test also applies under Article I, section 9, *see State v. Westlund,* 75 Or App 43, 51 n 9, 705 P2d 208, *rev allowed* 300 Or 332 (1985), we agree with LaFave:

"  '[A] thief has no legitimate expectation of privacy in stolen property, as

Reversed and remanded.

---

such' and that means that the thief cannot establish standing solely by virtue of his *relationship to stolen property, but would have to establish that the police* actually interfered with his person or with a place as to which he had a reasonable expectation of privacy." 3 LaFave, *Search and Seizure,* §11.3, supp 319 (1978 and supp 1986).

Because defendant had no property or privacy interest in the Bests' home, and because the video tapes and electronic equipment were in that home, the police did not violate *his* reasonable expectation of privacy. He does not suggest any other test under Article I, section 9, that would give him "standing."