Argued February 24, reversed May 2, 1977

# STATE OF OREGON, *Respondent,*
*v.*
# STEVEN EVERETT BUSH, *Appellant.*
## (No. C76-06-08186, CA 7003)

563 P2d 747

Susan F. Mandiberg, Metropolitan Public Defender, Portland, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

TANZER, J.

**TANZER, J.**

Defendant was convicted of public indecency, ORS 163.465, and appeals contending that the trial court erred in failing to suppress evidence of an impermissibly suggestive pretrial identification.

The United States Supreme Court has held that a conviction based upon an identification process which, under the totality of the circumstances, "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" is violative of defendant's right to due process. *Simmons v. United States,* 390 US 377, 384, 88 S Ct 967, 19 L Ed 2d 1247 (1968); *see also Foster v. California,* 394 US 440, 89 S Ct 1127, 22 L Ed 2d 402 (1969). We applied the *Simmons* rule in *State v. McBain,* 24 Or App 737, 547 P2d 188, *rev den* (1976), where the first identification was from an array of photographs among which that of the defendant was the only one to portray a person resembling the victim's description of her assailant. The *Simmons* standard applies with equal force in this case as it did in *McBain.*

On June 7, 1976, a seven-year-old girl was molested while playing in a classroom at Portland State University. She promptly reported the incident to her mother who, in turn, notified a campus security officer. For about 15 minutes the three of them tried to locate the scene of the incident, but the child could not remember in which classroom it had occurred. At some point during this initial investigation, the child described her assailant as a white male with brown hair, a mustache, sideburns and no eyeglasses.

The security officer then gathered an array of six photographs to show to the child. He suspected the defendant and included a photograph of him along with five other easily available photographs of persons in the same age group and race. Two of the people pictured had light hair and wore glasses. The photograph of defendant was the only one showing a

mustache. The child chose defendant's picture because, as she testified, "it looked like" her assailant. Prior to the identification, the security officer said nothing to suggest that the assailant's picture was included in the array and he said nothing afterwards to reinforce the child's choice. About 45 minutes after this initial throwdown, in the presence of the police, the child was again shown the same six pictures and she again selected that of defendant.

Four days later, at the child's home, a police officer showed her a different set of six photographs all of which matched the general description of her assailant, all with mustaches, including the same picture of defendant which she had originally identified. The child again picked defendant's photograph because, as she testified on direct examination, "[i]t looked like the ones I was shown before."

Prior to the trial, defendant moved unsuccessfully to suppress the pretrial identifications. The child, a bright and perspicacious witness, identified defendant at the suppression hearing, but her direct testimony shows that the in-court identification was based solely on the pretrial throwdowns:

"Q  * * * [W]hy did you point to that man that you just pointed to?

"A  Because it looked like a man I saw in the pictures."

Also, on redirect examination, she testified that she had been prepared to expect her molester to be present in the courtroom, which further weakens the integrity of the in-court identification:

"Q  Did anybody tell you that the person who took you out of the classroom would definitely be here?

"A  Yeah.

"Q  Who told you that?

"A  I forgot.

"Q  Do you remember what was said to you?

"A  Not very much.

"Q  Did somebody say to you that the person would be in a specific or a given place in the courtroom?

"A  Yeah.
"Q  Who told you that?
"A  You did.
"Q  I did?
"A  I thought you did."[1]

Defendant was then tried and found guilty by the court, sitting without a jury. By stipulation, the only evidence received at trial was the police reports which described the child's out-of-court identifications. There was no other evidence linking defendant to the assault.

It appears from the totality of the circumstances that the identification procedure which produced the qualified in-court identification was impermissibly suggestive and the evidence of identification by the child should have been suppressed.

We note that this case involves neither an identification of the defendant's person under exigent circumstances, nor an in-court identification based upon independent memory of the crime. *See State v. McJunkin,* 27 Or App 401, 556 P2d 164 (1976), *rev den* (1977); *State v. Miller,* 2 Or App 87, 465 P2d 894, *rev den* (1970), *cert den* 406 US 974 (1972).

Reversed.

---

[1] It appears that the girl was probably mistaken and that she had been so informed by a woman associated with the prosecution other than the prosecutor.