## STATE OF OREGON,
*Respondent,*

*v.*

## KEVIN BRYAN MACKEY,
*Appellant.*

(86-742; 86-746; CA A41159 (Control); CA A41160)
(Cases Consolidated)

740 P2d 231

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Charlene Woods, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, P. J.

### WARDEN, P. J.

Defendant was convicted in separate trials on two charges of robbery in the first degree, ORS 164.415(1)(a),[1] and the trial court imposed multiple five-year minimum sentences under ORS 161.610. Defendant appeals. We modify the sentence and otherwise affirm.[2]

He first contends that the trial court erred in denying his motions to suppress identifications of him by certain witnesses to the robberies, because the identification procedures used were impermissibly suggestive. At the conclusion of the hearing on the motions to suppress the identifications, the trial court orally stated its findings:

"THE COURT: Well, clearly the Court finds that the photo lineup itself is not suggestive. All six people look about the same age, have facial hair. I see three of them with beards, maybe in a fourth one. All have mustaches. All appear to be approximately the same size, same facial features, and that's indicated in Defendant's Exhibit 101, the lineup clearly is not suggestive. It's fair representations.

"The identification by Mr. Lentz was just a happenstance. I agree, it's the same as some witness to a crime later seeing the person on the street, and there was nothing suggestive about that identification.

"The Parker identification, you've got to remember that they were operating at two o'clock in the morning, right after the robbery, about four hours after. It was an emergency situation. The Court finds there was nothing done by Officer McLean to suggest to the witness, Stephanie Parker, that she was going to be looking at the defendant. There was no, apparently, information given to Miss Parker about the car that was followed, any items that were seized and there was nothing in Officer McLean's conduct to suggest that he in any way suggested to her that the defendant was the one, in fact, that committed the robbery. The Court notes that particularly this one, the early morning identification, very close to the time of the commission of the crime, and no details were given to her."

The Supreme Court has stated that a decision on the admissibility of identification evidence involves two steps:

---

[1] The robberies involved a restaurant and gas station, and they occurred within a two-hour period on the evening of April 13, 1986.

[2] The appeals have been consolidated.

"First, the court must determine whether the process leading to the offered identification was suggestive or needlessly departed from procedures prescribed to avoid such suggestiveness. If so, then the prosecution must satisfy the court that 'the proffered identification has a source independent of the suggestive confrontation' or photographic display * * * or that other aspects of the identification at the time it was made substantially exclude the risk that it resulted from the suggested procedure.

"It is in making this second determination that [certain] facts * * * are relevant. These include the opportunity that the witness had at the time to get a clear view of the persons involved in the crime and the attention he or she gave to their identifying features, the timing and completeness of the description given by the witness after the event, the certainty expressed by the witness in that description and in making the subsequent identification." *State v. Classen,* 285 Or 221, 232, 590 P2d 1198 (1979). (Citations and footnotes omitted.)

Defendant first argues that it was impermissibly suggestive to allow Parker to view only defendant through a one-way window at the police station show-up. The show-up took place about 30 minutes after defendant was arrested and about four hours after the restaurant robbery that Parker had witnessed. Even though Parker was not told of the physical evidence found on defendant linking him to the robbery, we agree with defendant that the show-up procedure used here was overly suggestive. However, because we conclude that the identification was nonetheless reliable, we hold that the trial court did not err in admitting that identification.

Parker was working in the kitchen of the restaurant on the night when it was robbed. She observed defendant and another man enter the restaurant through the rear door. Defendant, carrying a shotgun, approached her and pushed her toward the manager's office. While he demanded money from the manager, Parker had an opportunity to examine defendant's unmasked face. She noted that he had a scar over one eye and a large tattoo on his upper right arm. She also noted the type and color of clothing that he was wearing and that he was lightly bearded and had light reddish-blond hair. Parker testified that she had no trouble identifying defendant at the show-up, at the subsequent photographic "throwdown" or at trial. Those facts, coupled with the short time interval between the robbery and the identification, indicate that the

show-up identification was reliable. *State v. Classen, supra.*

■ Defendant next argues that the identification of defendant during a chance encounter between a witness to the gas station robbery and defendant outside the police station was "improper," because "the confrontation occurred too long after the robbery." We reject that argument, because the encounter occurred within a few hours after the robbery and no suggestive police identification procedures were involved.[3]

■ Defendant also contends that a photographic throwdown was overly suggestive, because it included pictures of defendant, a codefendant and four photographs of individuals dissimilar in appearance from defendant. That contention has no merit. After reviewing the throwdown, we agree with the trial court that it shows six white men of similar age with substantially similar hair color, style and length, facial structure and facial hair, wearing similar clothing. On that basis, we cannot say that the throwdown would "lead the witness to identify a person on some basis other than the witness' memory," *State v. Maher,* 72 Or App 543, 546, 696 P2d 573, *rev den* 299 Or 314 (1985), and it was therefore not impermissibly suggestive.

■ Defendant next contends that the trial court erred in imposing two five-year minimum sentences under ORS 161.610, which allows an enhanced penalty for using a firearm in the commission of a felony.[4] The state concedes that the trial court had no authority to impose the second five-year minimum sentence. *See State v. Wells,* 82 Or App 283, 728 P2d 533 (1986). We agree and modify defendant's sentence by

---

[3] Defendant concedes that the encounter was "apparently inadvertent" and thus independent of any police procedure.

[4] ORS 161.610 provides, in pertinent part:

"(3) [I]f a defendant is convicted of a felony having as an element the defendant's use or threatened use of a firearm during the commission of the crime, the court shall impose at least the minimum term of imprisonment as provided in subsection (4) of this section.

"(4) The minimum terms of imprisonment for felonies having as an element the defendant's use or threatened use of a firearm in the commission of the crime shall be as follows:

"(a) Except as provided in subsection (5) of this section, upon the first conviction for such felony, five years."

vacating the second five-year minimum sentence imposed pursuant to ORS 161.610.

Convictions affirmed; sentence in case no. 86-746 modified by vacating five-year minimum sentence.