Submitted October 29, 2010, affirmed January 5, 2011

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**STANLEY DALE JAMES, JR.,**
*Defendant-Appellant.*

Umatilla County Circuit Court
CF080348; A140544

245 P3d 705

Peter Gartlan, Chief Defender, and Erica Herb, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Cecil A. Reniche-Smith, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant was convicted of second-degree robbery, ORS 164.405; second-degree theft, ORS 164.043; harassment, ORS 166.605; and carrying a concealed weapon. ORS 166.240. On appeal, he asserts that the trial court erred in denying his pretrial motion to exclude evidence of two witnesses' identification of him as the perpetrator of the crimes. For the reasons explained below, we conclude that the trial court properly determined that, although the procedure used for the identification was unduly suggestive, "other aspects of the identification at the time it was made substantially exclude the risk that it resulted from the suggestive procedure." *State v. Classen*, 285 Or 221, 232, 590 P2d 1198 (1979). Defendant also argues that the trial court erred in denying his motion for judgment of acquittal on the robbery charge and in failing to instruct the jury that a unanimous verdict was required; we reject both of those arguments without discussion. Accordingly, we affirm.

The pertinent facts are not disputed. On December 11, 2006, two men entered a Safeway store in Pendleton and began stuffing beer into a backpack. Two employees spotted the men and attempted to prevent them from leaving the store with the beer. One of the men stealing the beer struck one of the employees in the face, and the two men escaped. The employees called the police, who responded within minutes. The employees provided the following description of the men who had stolen the beer: One was "a fairly large guy; Indian male, 6' to 6'2", 220 pounds, wearing baggy blue jeans, white tank-top shirt"; the other was a "small guy," an "Indian male approximately 5' tall, 110 pounds, wearing a black coat with a hood and baggy blue pants, carrying a black backpack." Both employees indicated that they would be able to identify the perpetrators.

Five hours later, the officer who investigated the Safeway robbery received a report of a disturbance at a Burger King restaurant. When the officer arrived at the Burger King, he recognized the men about whom the complaint had been made as "exactly" matching the descriptions of the Safeway robbery suspects. In particular, he noted that, although the type of clothing was not unusual, wearing a

tank-top shirt without a coat in December was unusual, as was the notable difference in height between the two suspects. Defendant—the taller of the two suspects—was placed in a patrol car with his companion, and they agreed to go with the officer to the Safeway "to get the matter cleared up." When they arrived at the Safeway, the two employees came out of the store and immediately identified defendant and his companion as the men who had stolen the beer from the store earlier in the day. At the time the identifications were made, defendant remained seated and handcuffed in the patrol car.

In his pretrial motion, defendant argued that the "show-up" procedure by which the two witnesses identified him was unduly suggestive. The trial court agreed, but found that, under the test announced in *Classen*, there were sufficient indicia that the identifications were independently reliable and, therefore, were not subject to exclusion from evidence. On appeal, defendant argues that the trial court erred in so concluding. As explained below, we disagree.

At the outset, the state argues that the show-up procedure was not unduly suggestive, noting that the mere fact that defendant was in custody during the show-up is not sufficient to establish that it was overly suggestive. However, as *Classen* demonstrates, the primary concern with "suggestive" procedures is the lack of properly constituted line-ups or photographic throw-downs at which a witness has an opportunity to choose a suspect from a group. 285 Or at 225-30. Clearly, under the test set forth in *Classen*, a procedure in which a witness is shown only a pair of joint suspects and asked to identify them is an unduly suggestive procedure. We reject without further discussion the state's suggestion that the show-up procedure at issue in this case was not unduly suggestive.

The central question, then, is whether, despite the unduly suggestive show-up procedure, other aspects of the identifications demonstrated reliability and substantially excluded the risk that the identification resulted from the suggestive procedure. *Id.* at 232. In *Classen*, the court identified a number of factors that are pertinent to that inquiry:

"These include the opportunity that the witness had at the time to get a clear view of the persons involved in the crime

and the attention he or she gave to their identifying features, the timing and completeness of the description given by the witness after the event, the certainty expressed by the witness in that description and in making the subsequent identification, and, of course, the lapse of time between the original observation and the subsequent identification. These are not to be taken as a mechanical checklist of 'constitutional' facts. Obviously other facts may also be important, such as the age and sensory acuity of the witness, *see State v. Bush*, 29 Or App 315, 563 P2d 747 (1977), or a special occupational concern with people's appearance or physical features, or the frequency of his or her contacts with individuals sharing the general characteristics of the person identified, *see Manson v. Brathwaite*, 432 US [98, 115, 97 S Ct 2243, 53 L Ed 2d 140 (1977)]. Listing these and other relevant inquiries must not distract attention from the ultimate issue whether an identification made in a suggestive procedure has nevertheless been demonstrated to be reliable despite that suggestiveness."

*Classen*, 285 Or at 232-33.

In applying those factors here, we conclude that they weigh significantly in favor of a conclusion that the witness identifications were based on a source independent of the suggestive show-up procedure. First, with respect to the opportunity the witnesses had to observe the perpetrators at the time of the crimes, the crimes occurred inside a supermarket that was open to the public, and the witnesses engaged in a face-to-face confrontation with the suspects at that location. Next, the descriptions given by the witnesses to the police were provided within minutes of the crimes and contained details including the race, height, weight, and clothing of both perpetrators. Both of those factors weigh heavily in favor of the identifications being reliable. The next factor concerns the time between the crime and the identification—in this case, approximately five hours. That relatively short amount of time does not weigh significantly against the admissibility of the identifications. *See, e.g., State v. Mackey*, 86 Or App 691, 695, 740 P2d 231, *rev den*, 304 Or 279 (1987) (rejecting a similar argument, in part, "because the [identification] occurred within a few hours after the robbery"). Finally, we note that both witnesses expressed certainty in their identifications; they indicated when they provided the detailed descriptions that they would be able to

identify the perpetrators of the crimes, and later, in fact, when confronted with defendant and his companion, again expressed certainty that they were the men who had perpetrated the crimes.

The trial court correctly concluded that, although the show-up procedure used in this case was unduly suggestive, the challenged identifications were sufficiently reliable, and therefore admissible.

Affirmed.